**GOULD, INC., Plaintiff,**

v.

**ARKWRIGHT MUTUAL INSURANCE COMPANY, et al., Defendants.**

No. 3 CV–92–403.

United States District Court, M.D. Pennsylvania.

Oct. 25, 1995.

John E. McKeever, Philadelphia, PA, Dennis R. Suplee, Diana S. Donaldson, Susan G. Caughlan, Schnader, Harrison, Segal & Lewis, Philadelphia, PA, Stacy J. Levitan, Philadelphia, PA, for plaintiff Gould, Inc.

John T. Harding, Jr., Kristen E. McIntosh, Zelle & Larson, Waltham, MA, Timothy E. Foley, Foley, Cognetti & Cowley, Scranton, PA, Anthony Robert Zelle, Waltham, MA, Carrie L. Okuno, Zelle & Larson, Waltham, MA, Karl S. Vasiloff, Zelle & Larson, Waltham, MA, for defendant Employers Ins. of Wausau.

Stephen W. Miller, Stephen Wilcox Miller, Clark, Ladner, Fortenbaugh & Young, Philadelphia, PA, Timothy J. Szuhai, Philadelphia, PA, Jo Ann Burk, Cuyler Burk & Matthews, Parsippany, NJ, Jan C. Walker, Kathleen F. Doran, Parsippany, NJ, for defendant Northbrook Excess and Surplus Ins. Co.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before this Court are the various motions for summary judgment filed by Defendant Employers Insurance of Wausau ("hereinafter Wausau").[1] Defendant Wausau moves for summary judgment on the ground

---

1. Defendant Wausau filed a motion for summary judgment on December 23, 1993, arguing that the pollution exclusion and the known loss doctrine operate to void coverage to Plaintiff Gould

that there is no existing coverage in the remaining insurance policy it issued to Plaintiff Gould because of either the pollution exclusion clause or the known loss doctrine.

For the reasons which follow, we will deny Defendant Wausau's motion for summary judgment on both the pollution exclusion clause and the doctrine of known loss.

## I

### BACKGROUND

On June 25, 1993, this Court held that the loss suffered by Plaintiff Gould, the corporate successor to the contaminated Marjol Battery site, may fall within the insured risk covered by the personal injury endorsement set forth in Gould's National Union Insurance Policy. *Gould Inc. v. Arkwright Mutual Insurance Co.*, 829 F.Supp. 722 (M.D.Pa. 1993). We noted that absent an additional specific exclusion to a personal injury endorsement that was added to the policy, coverage may lie.[2]

As we have stated in our previous opinions, if an insurance policy, when viewed as a whole, is reasonably susceptible to more than one interpretation, it is considered ambiguous and any legitimate ambiguity must be resolved against the insurer. When this Court originally assessed the National Union policy and its provisions, we stated that it was our responsibility to give effect to the whole policy not just one part of it. We expressed a desire to give reasonable meaning to all of the contract's provisions and to avoid rendering some provisions useless or inexplicable.

## II

### LEGAL STANDARD

*Summary Judgment*

Summary Judgment is appropriate if the "pleadings, depositions, answers to interroga-

tories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c).

■ The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).

■ Issues of fact are " 'genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693–694 (3rd Cir.1988), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3rd Cir.1988).

## III

### DISCUSSION

A. *Pollution Exclusion*

Defendant Wausau seeks summary judgment on the grounds that the pollution exclusion in the one Wausau policy remaining at

---

in certain insurance policies issued to Gould by Wausau. Both parties agree that there is only one remaining policy in which there is a dispute as to coverage. On August 28, 1995, Defendant Wausau submitted two motions whereby they split the issues of the pollution exclusion and the known loss doctrine into two separate motions for summary judgment. We will examine all the relevant motions, corresponding briefs and oppo-

sition briefs of all three pending motions in formulating our decision.

2. In our Memorandum and Order of June 25, 1993, we stated that we must resolve any ambiguity in favor of the insured and held that the loss suffered by the Plaintiff potentially falls within the insured risk. We did not, however, at that time, determine that coverage was warranted.

issue in this litigation bars coverage for Plaintiff Gould's claims. The applicable pollution exclusion in Wausau's policy excludes coverage for "any liability arising out of the discharge, dispersal, release or escape of .... contaminants or pollutants ... unless such discharge, dispersal, release or escape is sudden and accidental."

When previously interpreting a pollution exclusion that was limited to "bodily injury and property damage," we held that the "sudden and accidental" pollution exclusion is unambiguous and effectively bars coverage for property damage. *See Gould, Inc. v. CNA*, 809 F.Supp. 328 (M.D.Pa.1992).

In the instant matter, Defendant Wausau argues that since Wausau's pollution exclusion bars coverage for "any liability" arising out of the release of pollutants, all of Gould's claims, even those which are based on allegations of "personal injury," should be dismissed. Wausau avers that the personal injury coverage afforded by the Wausau policy is defined, in part, as damages arising out of specific enumerated torts. Wausau further contends that unlike the CNA and National Union policies that we considered in reaching our prior decisions addressing the scope of personal injury coverage, the enumerated torts in the Wausau policy do not include "other invasion of the right of private occupancy."

In our June 25, 1993, Memorandum and Order, we examined the National Union policy issued to Plaintiff Gould. We determined that by its terms, National Union's pollution exclusion clause applies only to the policy's property damage and bodily injury provisions. It does not purport to restrict coverage for personal injury. We reasoned that "[W]hile we have no doubt that National Union intended to exclude coverage for bodily injury or property damage arising out of the release of various pollutants, it can arguably be said that the "personal injury" endorsement represents an addition or extension of coverage which is not limited by the pollution exclusion clause contained in the property damage portion of the policy". We concluded that "one could reasonably interpret the entire policy as providing coverage for personal injury damages which are not

subject to the exclusions contained in the property damage portion of the policy".

Defendant Wausau acknowledges that its policy follows form to the terms and conditions of the First State Policy, except with respect to the layer of coverage and limits of liability. (*See* Doc. No. 548 at p. 3). Defendant Wausau argues that the applicable pollution exclusion in its policy, which flows from the language of the First State Policy, excludes coverage for "any liability arising out of the discharge, dispersal, release or escape of ... contaminants or pollutants ... unless such discharge, dispersal, release or escape is sudden and accidental."

■ We agree with Defendant Wausau that in examining its policy, the language "any liability" is clear and unambiguous. Wausau avers that since the personal injury clause relates to any liability, not just bodily injury or property damage, the pollution exclusion is applicable and bars coverage to Plaintiff Gould because such discharge, dispersal, release or escape was not sudden and accidental. However, Wausau's assertions are narrowly tailored and do not comport with established norms of insurance policy interpretation. If a policy, when viewed as a whole, is reasonably susceptible to more than one interpretation, it is considered ambiguous. *Vlastos v. Sumitomo Marine & Fire Insurance*, 707 F.2d 775, 778 (3rd Cir.1983).

■ In our Memorandum and Order of September 3, 1993, we noted that "when one reads the First State policy it provides that policy is dictated by and subject to the terms of CNA's policy." (*See* Doc. No. 191, p. 1, fn. 1). Nonetheless, Wausau states that "[T]here is a First State Policy. The Wausau policy follows form to the First State policy. The First State policy does not follow form to the CNA policy." However, in interpreting the provisions of the First State policy, the very provisions that dictate the Wausau policy, it appears clear that the First State policy is subject to the terms of the CNA policy.

The First State policy has a pollution exclusion which states:

I. This policy shall not apply, unless insurance is provided by a policy listed in

the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance:

VI. to any liability of any INSURED arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, solids, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water unless such discharge, dispersal, release or escape is sudden and accidental.

Wausau's main argument is that the First State policy stands on its own with its own coverage grant, terms, definitions and exclusions and does not follow form to the underlying CNA policy. Wausau states, that "[U]nlike the CNA policy, which has a separate endorsement for personal injury coverage, the First State Policy has its own definitions of personal injury in the body of the policy. The First State Policy also has its own pollution exclusion which is different from the pollution exclusion in the CNA policy."

We agree with Defendant Wausau that this Court has not interpreted the pollution exclusion of the Wausau policy. But, Wausau's reasoning would have this Court ignore the language that introduces First State's pollution exclusion.

The Wausau policy follows form to the terms and conditions of the First State Policy, except with respect to the layer of coverage and limits of liability. Yet, when one examines the terms of the First State Policy it is directed to an underlying insurance carrier, i.e. the CNA Policy.

Paragraph I of the First State exclusions states, *"this policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance, and then for no broader coverage than is afforded by such insurance."* (Emphasis added). To avoid any undue confusion, we feel it is necessary to break down the introductory language of the First State exclusions section.

This Court reads and interprets paragraph I of First State's exclusion section as follows: *[T]his policy (First State's) shall not apply,* *unless insurance is provided by a policy listed in the schedule of underlying insurance, (CNA policy), and then for no broader coverage than is afforded by such insurance, (CNA policy).*

Therefore, the First State Policy applies because insurance is provided by a policy of underlying insurance, the CNA policy. The "unless" language of paragraph I is a condition that only triggers the policy, it does not delineate coverage. The coverage aspect is dictated by the second half of the sentence, namely, "then for no broader coverage than is afforded by such insurance." The "such insurance" refers the reader to the CNA policy.

While it is true that the First State Policy cannot give broader coverage than that listed in the underlying CNA policy, it is also true that the First State policy cannot void coverage given the insured under the CNA policy. The language "afforded by such insurance" establishes that insurance (CNA policy) is provided. Whatever CNA's policy gave the insured will be applicable in First State's policy. The only limitation is that the coverage cannot be broader than the CNA policy.

■ Wausau argues that under fundamental principles of insurance contract interpretation, exclusionary clauses will not be read to grant or expand coverage. *See, Stillwater Condominium Ass'n v. American Home Assurance Co.,* 508 F.Supp. 1075, 1079 (D.Mont. 1981), *aff'd,* 688 F.2d 848 (9th Cir.1982). We agree with Wausau completely. However, this argument is not applicable in the present situation as we have not granted or expanded coverage to Plaintiff Gould. We merely found that the "afforded by such insurance" language directs the policy holder to the CNA policy to determine the extent of coverage.

■ Without the introductory language contained in the First State exclusion section, First State's pollution exclusion would exclude all coverage, since it purports to exclude "any liability" resulting from pollution.

However, the underlying CNA policy has a more limited pollution exclusion—it excludes only "bodily injury" and "property damage",

not "any liability," as in the First State policy.

Having determined that the Wausau policy incorporates the language of the First State policy, which in turn directs the reader to the underlying CNA policy, our previous Memorandums and Orders (*See* Memorandum and Orders dated June 25, 1993, September 3, 1993, and April 12, 1994) remain operative.

Thus, CNA's pollution exclusion clause applies only to the policy's property damage and bodily injury provisions. As we have stated many times previously, one can reasonably interpret the entire CNA policy as providing coverage for personal injury damages which are not subject to the exclusions contained in the property damage or bodily injury portion of the policy.

Since the First State policy directs the reader to the underlying CNA policy, the personal injury endorsement of the CNA policy is applicable. Thus, the personal injury endorsement with its coverage for "wrongful entry" and "other invasion of the right of private occupancy", is, in the context of the entire policy, specifically the pollution exclusion clause, ambiguous.

The "any liability" language contained in First State's pollution exclusion is inapplicable. The prefatory language of First State's exclusions section directs us to the CNA policy. As that policy is ambiguous as it relates to the personal injury coverage, we must resolve the ambiguity in favor of the insureds. Therefore, the loss suffered by Plaintiff Gould potentially falls within the insured risk and thus summary judgment based on the pollution exclusion is denied to Defendant Wausau.

## B. *Known Loss Doctrine*

Defendant Wausau argues that its policy issued to Plaintiff Gould for the period of March 1, 1982–March 1, 1983, does not afford coverage or specifically that they are relieved from providing coverage because of the Known Loss Doctrine. In short, they assert that Plaintiff Gould had knowledge of the

March 7, 1969 PADER Order; the January 27, 1976 PADER Order; and the March 10, 1980 PADER Order, as well as all DER correspondence leading up to each Order. (Doc. No. 551, pp. 2–5 & Doc. No. 541, pp. 13–37). Defendant Wausau avers that Plaintiff Gould should not be allowed to recover, or more accurately, receive coverage after they improperly or perhaps deceptively contracted with the insurance companies, while knowing with certainty that significant pollution had already occurred. Wausau contends that Gould knew or should have known that it would suffer a loss as of January 27, 1976, the date the Pennsylvania DER confirmed the fugitive emissions of lead and the potential for off-site contamination from the Marjol site.

Invoking the "Known Loss" Doctrine, Wausau contends that Gould cannot receive insurance coverage for losses that it knew about at the time it obtained the insurance. Specifically, Wausau contends that because it is clear that Gould knew it had at least some contamination prior to May 1, 1980, the date Gould acquired the Marjol site, coverage under the policy which took effect at that time, must be barred, because the resulting "losses" suffered by Gould as successor to Marjol were already a known certainty.[3]

To date, the cases within and without this circuit that have addressed the known loss defense have been clear in reminding us that the defense is one that is grounded in policy considerations. The case sub judice is not one in which the insurers have alleged fraud on the part of the insured in the application process. Instead, in seeking protection via the "known loss" defense, Wausau asks the Court to insulate it from paying claims on the ground that the risk which came to pass was uninsurable at the time the insurance policy was sold. Wausau asserts, at the time the policy was issued there was no risk, as the pollution did, in fact, happen. Although the insurer was presumably free to inquire about pollution or at least the potential for what DER considers pollution, in the course of the

---

**3.** It is interesting to note that Wausau's contention is couched in the careful language "... Wausau contends that because it is clear ..." instead of "because it is uncontested ...." Indeed from the documents before us there appears to be a material question as to when Gould knew of the contamination and potential for any resultant loss.

application process to obtain insurance, there is no mention of this in the documents submitted to the Court. Perhaps at trial the parties will delve into that vein of inquiry, but for today we must temper Defendants' assertion of Plaintiff's knowledge with the reality that despite such "obvious pollution", Defendants issued the policies.

■ At the time of writing of this opinion, we can find no case in which the State Courts of Pennsylvania have addressed the Known Loss Doctrine. It is clear, however, from the documents submitted and the cases cited therein, that the known loss defense has been recognized to different degrees by the Courts of other States. Accordingly, we must now make a prediction about how the Supreme Court of Pennsylvania would rule on the issue of known loss. *UTI Corporation v. Fireman's Fund Insurance Company,* 896 F.Supp. 362 (D.N.J.1995) (citing *Hakimoglu v. Trump Taj Mahal Associates,* 876 F.Supp. 625 (D.N.J.1994). *See also McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 661 (3rd Cir., *cert. denied,* 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980)).

We hold, if presented with the matter before us, the Pennsylvania Supreme Court would recognize the "known loss" defense in some form. We turn our attention to what specifically has to be known prior to a liability policy's inception date for purposes of denying coverage under general insurance principles. Plaintiff Gould asserts that although the source of some of the losses ultimately sustained *may* have been known to the insured (Gould) prior to May 1, 1980, the actual acquisition of the Marjol site, the financial injury which forms the basis for the instant claim for insurance coverage was not yet known. For direction on this critical point, and because we cannot find and the parties have not pointed us to any other case in the Third Circuit conclusively addressing the Known Loss Doctrine, we turn to the *UTI Corp.* case, supra, in which the District Court of New Jersey made clear the distinction between first party insurance policy lia-

bility and third party liability. The Court in *UTI Corp.* held:

[I]n the context of first party insurance policies, once the unfortunate event occurs [ ], there remains no statistical uncertainty of risk to be appropriately insured against. By contrast, however, the occurrence of the event [ ] does not destroy the requisite element of statistical uncertainty in the third party liability context, as the relevant events remain to be determined, including: is there any harm to off site locations; will claims be filed at all; what number of claims will be filed; what sums of money will the claims demand. In other words, Plaintiff did not purchase liability insurance to compensate it for all property damage, but rather to compensate it for all sums for which it is held liable as a result of claims in which damage to property of third parties is alleged. (In layman's terms, "in excess" of the primary policy).[4] The relevant "loss" to Plaintiff is not the property damage itself, but rather the company's legal liability arising therefrom. (emphasis and parenthetical added).

*UTI Corp. v. Fireman's Fund Insurance Company,* 896 F.Supp. 362 (D.N.J.).

We find this rationale persuasive. It is especially applicable here, where it is an excess liability policy at issue. In order for the Known Loss Doctrine to preclude coverage, there must be evidence that there existed certain knowledge of a particular legal liability which would reach the excess layer. Defendants have supplied no proof that, at the time of contracting, there existed certain knowledge of a particular legal liability.

■ Defendant Wausau may be able to do so at trial, but to date, they have not presented the type of evidence that would remove any doubt or resolve decisively any question of fact regarding Plaintiff's knowledge of a specific legal liability. Any DER notice or consent degree or notice of violation is exactly what its name suggests, a notice, and a notice that the DER considered Marjol a responsible party does not obligate Marjol or its successor, Gould, to a specific third

---

4. As we have intimated before, when it comes to insurance policies, every non insurance lawyer individual is a layman. And this is the very reason Courts are to find against the insurer when faced with ambiguous policy provisions.

**110**

party liability in the future. While it may be true that an action to recover cleanup costs was inevitable as of the date that Marjol and thus, Gould, was informed of problems at the Marjol site, Gould's liability in that action was not a certainty. There was still a contingency and the fact that Gould may have known that it was more probable than not that it would be sued (successfully or otherwise) is not enough to preclude coverage. Accordingly, Defendant Wausau's Motion for Summary Judgment on the grounds that any pollution-related losses were "known losses" by May of 1980 (date when Gould acquired Marjol) and certainly by March of 1982 (the date coverage began) will be denied.

*CONCLUSION*

For the reasons listed above, the loss suffered by Plaintiff Gould potentially falls within the insured risk. Therefore, Defendant Wausau's motion for summary judgment on both the pollution exclusion and the known loss doctrine is denied. An appropriate Order is attached.

*ORDER*

AND NOW, THIS 25th DAY OF OCTOBER, 1995, IT IS HEREBY ORDERED THAT:

1. Defendant Wausau's motion for summary judgment on both the pollution exclusion clause and the known loss doctrine is DENIED.

2. This Order disposes of documents 257, 539 and 545.

3. The Clerk of Court is directed to mark the docket sheet accordingly.