XL SPECIALTY INSURANCE CO.

v.

KIEWIT OFFSHORE SERVICES, LTD.

No. CIV.A.C–03–246.

United States District Court,
S.D. Texas,
Corpus Christi Division.

Aug. 31, 2004.

Franklin H. Jones, III, Michael L. McAlpine, Richard A. Cozad, William Scarth Clark, John R. Fitzgerald, McAlpine & Cozad, New Orleans, LA, for XL Specialty Insurance Co.

Andrew T. McKinney, IV, McKinney & Cooper LLP, Houston, TX, for Kiewit Offshore Services, Ltd.

James H. Robichaux, Matthews and Branscomb, Corpus Christi, TX, for RBT Welders, Inc.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

HEAD, Chief Judge.

XL Specialty Insurance Company issued a Marine Excess Liability Policy to RBT Welders, Inc., which provided coverage from March 1, 2002 to March 1, 2003. RBT then supplied welders to Kiewit Offshore Services, Ltd. for a project in Ingleside, Texas. On January 6, 2003, an explosion at the Kiewit facility resulted in the deaths of Ernesto Moreno (a payroll employee of Kiewit) and Mann Van Nguyen (a payroll employee of RBT). Wrongful death claims were filed against Kiewit by relatives of the decedents. Kiewit sought coverage from XL Specialty for these claims.

Pending before the Court are (1) XL Specialty's Motion for Summary Judgment (D.E.16); (2) Kiewit's Motion for Summary Judgment (D.E.43); (3) XL Specialty's Motion for Summary Judgment Regarding the Third–Party Claim (D.E.56); (4) Kiewit's Motion for Summary Judgment on Indemnity (D.E.62); and (5) Kiewit's Motion for Summary Judgment on Indemnity against RBT (D.E.82). The Court (1) DENIES XL Specialty's Motion for Summary Judgment (D.E.16); (2) DENIES Kiewit's Motion for Summary Judgment (D.E.43); (3) DENIES XL Specialty's Motion for Summary Judgment Regarding the Third–Party Claim (D.E.56); (4) GRANTS Kiewit's Motion for Summary Judgment on Indemnity (D.E.62); and (5) GRANTS Kiewit's Motion for Summary Judgment on Indemnity against RBT (D.E.82).

Ultimately, the parties, in plaintiff's petition and in defendant's counterclaim, seek a declaratory judgment 1) as to whether or not RBT has an obligation to defend and indemnify Kiewit for claims brought against it in the underlying litigation and settlement and 2) as to whether or not XL Specialty's policy provides coverage for any such obligation. The Court finds, as a matter of law, that RBT does have such an obligation and that XL Specialty's policy does provide coverage for such obligation-thereby granting Kiewit's Motions for Summary Judgment on Indemnity and denying XL Specialty's Motion for Summary Judgment on the Third–Party Claim.[1]

*1) Does the Kiewit–RBT subcontract require RBT to indemnify Kiewit for its own negligence and if so, is this indemnification provision enforceable?*

A contractual right to indemnity should be determined as a matter of law. *Fisk Elec. Co. v. Constructors & Assoc., Inc.*, 888 S.W.2d 813, 815 (Tex.1994). To be enforceable, indemnity agreements must meet the fair notice requirements of the express negligence doctrine and con-

---

1. The Court notes that had it not been for the indemnification provision in the Kiewit–RBT subcontract, there would have been no coverage under the XL Specialty policy for the claims brought against Kiewit for those reasons stated in plaintiff's Motion for Summary Judgment (D.E.16). However, as the Court is granting Kiewit's Motions for Summary Judgment on Indemnity, the parties' original cross-motions for summary judgment (D.E.16 and 43) must be denied.

spicuousness. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex.1993). "The express negligence doctrine states that a party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract. The conspicuous requirement mandates 'that something must appear in the face of the [contract] to attract the attention of a reasonable person when he looks at it.'" *Id.* at 508.

■ The Court finds, as a matter of law, that the indemnification provision of the RBT–Kiewit subcontract is conspicuous. The provision is marked as "Indemnification" and the language of the provision is in contrasting type to the surrounding text. The Court also finds that the provision satisfies the express negligence test as it expresses the intent that. Kiewit is seeking indemnity from the consequences of its own negligence in specific terms within the four corners of the contract. The plain language of the provision is that RBT agrees to indemnify Kiewit for claims whether or not those claims were caused in part by the active or passive negligence or other fault of Kiewit, so long as those claims were not caused by the sole negligence of Kiewit.[2]

As the indemnification provision meets the fair notice requirements, the Court finds as a matter of law that RBT did contractually agree to indemnify Kiewit for Kiewit's own negligence as long as Kiewit's

negligence was not the sole cause for the claims or liability. XL Specialty, in its pleadings, cites to the negligence of both RBT and Kiewit in the explosion. Therefore, the Court finds that, in this instance, RBT was contractually obligated to indemnify Kiewit for the claims resulting from the explosion through the valid and enforceable indemnification provision.

*2) Does the XL policy provide coverage for the indemnity agreement?*

■ As the Court finds that RBT was contractually obligated to indemnify Kiewit for the claims resulting from the explosion through the valid and enforceable indemnification provision, it must now consider whether the XL policy provides coverage for such indemnity agreement. After an analysis of the language of the XL policy and the Atlantic policy, the Court finds that the XL policy does provide coverage for the indemnity agreement.

The Contractor's Endorsement of the XL policy states:

> It is agreed that the insurance afforded by this policy does not apply: 1)To any liability for personal injury or property damage arising out of liability assumed by the Insured under any contract or agreement. . . . Unless insurance thereof is provided by a policy listed in the underlying insurance schedule, and then only for such coverage as is afforded by the policy.

Thus, the XL policy has an exclusion for liability assumed under any contract or

---

2. There is Texas case law that interprets almost identical language to the indemnity provision here to mean that the indemnitor promised to indemnify the indemnitee for the indemnitee's own negligence. In *Enserch Corp. v. Parker*, 794 S.W.2d 2, 8 (Tex.1990), the provision at issue read: "[Indemnitor] assumes entire responsibility and liability for any claim or actions based on or arising out of injuries, including death, to persons or damages to or destruction of property, sustained or alleged to have been sustained in

connection with or to have arisen out of or incidental to the performance of this contract by [indemnitor], its agents and employees, and its subcontractors, their agents and employees, regardless of whether such claims or actions are founded in whole or in part upon alleged negligence of [indemnitee]." The Court stated that "[i]t is clear ... that the contract as a whole is sufficient to define the parties' intent that [the indemnitor] indemnify [the indemnitee] for the consequences of [the indemnitee's] own negligence." *Id.*

agreement, but it also has an exception to that exclusion if coverage for such liability is afforded under the underlying general liability policy. The general liability policy that RBT procured with Atlantic Insurance Company, in which Kiewit is protected as an Additional Insured, is listed in the XL policy's Endorsement No. 2, Schedule of Underlying Insurances. If the Atlantic policy, the underlying general liability policy, provides coverage for liability assumed by RBT under any contract or agreement, then the XL policy also provides coverage for such liability.

The question next becomes whether the Atlantic policy provides coverage for the valid and enforceable indemnification provision assumed by RBT under its subcontract with Kiewit. The Atlantic policy, in its Exclusions section, states:

> This insurance does not apply to: ... b. 'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages.... 2) Assumed in a contract or agreement that is an 'insured contract', provided the 'bodily injury' or 'property damage' occurs subsequent to the execution of the contract or agreement.

After review of this language, the more specific question is whether or not the RBT–Kiewit subcontract was an "insured contract," as defined by the Atlantic policy.

The Atlantic policy defines an "insured contract" as

> that part of any other contract or agreement pertaining to your business ... under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

The indemnification provision of the Kiewit–RBT subcontract, in which RBT promised to save Kiewit harmless from all claims of liability, falls squarely within the definition of insured contract under the Atlantic policy. Thus, the Court finds that the Atlantic policy provides coverage for the liability referenced in the indemnity provision. As such, the Court also finds that the XL policy provides coverage for the indemnity provision.

Thus, the Court grants Kiewit's motions for summary judgment for indemnity, denies XL Specialty's motion for summary judgment on the third-party claim, and ultimately declares judgment on the coverage issue to Kiewit. Further, because the Court has based its ultimate summary judgment of coverage for Kiewit upon the indemnification issues, the Court denies XL Specialty's and Kiewit's initial Motions for Summary Judgment (D.E.16, 43).

Therefore, the Court declares that XL Specialty has a duty to defend and indemnify Kiewit for all claims and allegations brought against it in the underlying litigation.