**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 15, 2007**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

——————————————

No. 06-20335

——————————————

UNITED NATIONAL INSURANCE COMPANY,

Plaintiff-Appellee,

versus

HYDRO TANK, INC., ET AL,

Defendants,

MOTIVA ENTERPRISES, L.L.C.,

Defendant-Appellant.

———————————————————————————————

On Appeal from the United States District Court
for the Southern District of Texas

———————————————————————————————

Before JONES, Chief Judge, and BENAVIDES and STEWART, Circuit
Judges.

EDITH H. JONES, Chief Judge:

This insurance coverage dispute requires the
interpretation of an insurance policy's Pollution Exclusion clause
and a Contractors Limitation Endorsement Clause. Finding no error
in the district court's conclusion that coverage was barred by the
first clause and not resurrected by the latter one, we AFFIRM.

## I. BACKGROUND

Three Hydro Tank workers were injured in July 2002 while
removing petroleum-byproduct sludge from a mixing tank owned and
operated by Appellant Motiva Enterprises at its Port Arthur, Texas,

refinery.  Shortly after entering the tank, two of the workers were overcome by fumes and fell face-first into the sludge.  The stricken men were courageously pulled out of the tank by Jimmy Duriso, their coworker.  All three were hospitalized and survived.

The injured Hydro Tank workers (collectively, the "Duriso Plaintiffs") sued Motiva in Texas state court, alleging severe brain and cardio-pulmonary damage from exposure to "toxic levels of hydrogen sulfide and/or other chemicals and vapors."  Motiva settled the lawsuit.

The sludge removal in which the Duriso Plaintiffs were injured was conducted pursuant to a March 2002 contract between Motiva and Hydro Tank, in which Hydro Tank agreed to indemnify Motiva against any claims arising out of the tank cleaning and to procure an umbrella liability insurance policy naming Motiva as an "additional insured."  Hydro Tank accordingly obtained a one-million-dollar commercial general liability ("CGL") policy from American Equity Insurance and a five-million-dollar umbrella policy from Appellee United National Insurance Company.  Both policies were effective on the date of the incident, but only the coverage of the United National policy is at issue in this appeal.[1]

_____

[1]     United National has stipulated that the American Equity CGL policy "provides valid and collectible coverage to Motiva for the claims of the Duriso plaintiffs and for Hydro Tank's liability to Motiva."  Moreover, for purposes of this suit, United National does not dispute Motiva's contention that the CGL policy is enforceable against Hydro Tank and that Hydro Tank agreed to indemnify Motiva against the Duriso Plaintiffs' claims.

The umbrella policy extends to Motiva the same degree of coverage offered by Hydro Tank pursuant to its indemnity agreement with Motiva.[2] After settling the Duriso suit, Motiva sought indemnity from United National up to the policy limit.

United National denied Motiva's claim and sued Motiva in the Southern District of Texas, requesting a declaratory judgment that it owed Motiva nothing. The district court granted summary judgment to United National based on the policy's Pollution Exclusion clause, interpreting it to bar Motiva's indemnification claim. Motiva appeals.

## II. DISCUSSION

This court reviews a summary judgment grant de novo, applying the same standards as the district court. Adams v. Travelers Indem. Co., 465 F.3d 156, 163 (5th Cir. 2006). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).

In this case, governed by Texas law, United National contended that it has no contractual responsibility for Motiva's defense costs or to indemnify Motiva for the settlement. Texas

---

[2] Although the underlying American Equity policy only covered indemnity up to one million dollars, Hydro Tank did not limit the amount of its indemnification obligation to Motiva in the May 2002 agreement.

3

follows the "eight-corners" rule of insurance contract interpretation. See, e.g., GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006). The "insurer's duty to defend is determined by the underlying plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." Liberty Mut. Ins. Co. v. Graham, 473 F.3d 596, 599 (5th Cir. 2000). If the pleadings allege facts stating a cause of action potentially falling within the insurance policy's scope of coverage, the insurer has a duty to defend. Id. at 600. Doubtful cases will be resolved in favor of the insured. Nat'l Union Fire Ins. Co. of Pittsburgh v. Merchants Fast Motor Lines, Inc., 939 S.W.3d 139, 141 (Tex. 1997). The insured party bears the initial burden of showing that there is coverage, while the insurer bears the burden of showing that any exclusion in the policy applies. Lincoln General Ins. Co. v. Reyna, 401 F.3d 347, 350 (5th Cir. 2005).

The duty to indemnify, however, is separate from, and narrower than, the duty to defend. See Lincoln General Ins. Co. v. Aisha's Learning Cent., 468 F.3d 857, 858 (5th Cir. 2006). Liability is not based solely on the pleadings, but rather on the facts actually established in the underlying suit. GuideOne, 197 S.W.3d at 310.

## A. Pollution Exclusion

4

United National contends that Motiva is not entitled to recover under the umbrella policy because the injuries arising out of the tank-cleaning incident fall within the policy's Pollution Exclusion clause.[3]  United National argues that since the Duriso Plaintiffs allege injury by a pollutant – namely, hydrogen sulfide gas – it has no duty to indemnify.  Motiva, conversely, argues that the pleadings can be read to allege that the workers were not injured by chemicals that constitute pollutants within the meaning of the exclusion, and therefore its claim is covered.

## 1.  Sufficiency of the Pleadings

The Duriso Plaintiffs alleged they "were caused to sustain serious injuries and damages while working in a tank when they were exposed to toxic levels of hydrogen sulfide and/or other chemicals and vapors."  As a result, they "became overcome by chemicals and toxins owned by [Motiva]...causing brain injury and

---

[3]     The relevant policy language states:

2.     Exclusions
This insurance does not apply to:
(...)
F.     (1)     "Bodily injury" or "property damage" which would not have occurred in whole or in part but for the actual, alleged or threatened [sic] discharge, seepage, migration, dispersal, release or escape of "pollutants" at any time. . . .

"Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  "Waste" includes materials to be recycled, reconditioned or reclaimed.

5

damage." Motiva argues that use of the conjunction "and/or" creates two injury scenarios: one in which the workers were injured by hydrogen sulfide gas, a pollutant,[4] and one in which they were injured by "other chemicals and vapors" that are not necessarily pollutants. Under the second scenario, Motiva asserts, the workers have not alleged injury by a pollutant.

Motiva's interpretation ignores the policy's plain language. The relevant clause states that coverage will be denied so long as "'bodily injury'...which would not have occurred <u>in whole or in part</u> but for the...alleged...release...of 'pollutants.'" Thus, if a claim alleges that injury arose at least in part from a pollutant, coverage is denied. <u>See, e.g.</u>, <u>Amoco Prod. Co. v. Hydroblast Corp.</u>, 90 F. Supp. 2d 727, 732-33 (N.D. Tex. 1999) (allegation of pollutant-related injury sufficient to trigger pollution exclusion clause); <u>Bituminous Cas. Corp. v. Kenworthy Oil Co.</u>, 912 F. Supp. 238, 241 (W.D. Tex. 1996) (same).

Motiva's argument amounts to the converse of the policy language. Motiva claims that if any aspect of an allegation includes a claim that injury <u>did not</u> arise as a result of a pollutant, then coverage is permitted. This patently contradicts the policy's language. Even assuming that Motiva's view of the complaint's language is plausible, the phrase "toxic levels of

---

[4]     Motiva does not dispute that hydrogen sulfide is <u>per se</u> a pollutant within the meaning of the policy.

6

hydrogen sulfide" alleges that the Duriso Plaintiffs' injuries arose at least in part from exposure to a pollutant.

A second textual argument Motiva employs in support of its interpretation also fails. Depending largely on dicta from an unpublished Fifth Circuit opinion interpreting a damages clause in a service contract, Motiva argues that the correct interpretation of the Duriso pleading reads the phrase "toxic levels of" as applying only to "hydrogen sulfide," and not to the latter phrase "other chemicals and vapors." See Vaulting & Cash Servs., Inc. v. Diebold, Inc., 1999 WL 1068257, at *2 (5th Cir., Oct. 22, 1999)(unpublished). The Vaulting court, however, was construing contractual language that is syntactically and semantically dissimilar from the operative language of the Duriso pleading.[5] Moreover, the panel explicitly stated that "grammatical parsing" is only part of the interpretive process, and the "reasonableness of the interpretation advanced by each party" also plays a significant role. Id.

If anything, the Vaulting decision supports United National's position. The most reasonable interpretation of the pleadings is that the phrase "toxic levels of" modifies both "hydrogen sulfide" and "other chemicals and vapors," particularly

---

[5] The Vaulting court determined that, in the phrase "in no event shall Diebold be liable to Subcontractor for indirect, incidental, consequential or similar damages, lost profits, [sic] lost business opportunities," the adjectival series "indirect, incidental, consequential, or similar" modified only "damages" and not the subsequent nouns. 1999 WL 1068257, at *2.

7

in light of the fact that the Duriso Plaintiffs only a few sentences later allege brain injury from "chemicals and toxins." Moreover, when general terms like "chemicals" and "vapors" follow specific terms like "hydrogen sulfide," there is a presumption that the general terms are to be construed to belong to the same class or category as the more specific term. See, e.g., In Re Biloxi Casino Belle Inc., 368 F.3d 491, 499 & n.8 (5th Cir. 2004)(discussing, in an insurance context, the ejusdem generis[6] canon). Accordingly, the most natural reading of the phrase "toxic levels of hydrogen sulfide and/or other chemicals and vapors" suggests that injury resulted from (1) toxic levels of hydrogen sulfide; (2) toxic levels of other chemicals or vapors; or (3) a combination of both.

## 2. Is properly stored sludge a pollutant?

Next, Motiva argues that a plausible reading of the complaint suggests that the Duriso Plaintiffs were injured not by hydrogen sulfide gas, but by the sludge itself, which Motiva contends is not a pollutant because it was properly stored in the mix tank. Motiva claims that since the workers do not allege the particular mechanism of their exposure to hydrogen sulfide, it is possible that they were injured by skin-to-sludge contact, rather than by inhalation of a gas. If the workers were overcome, for example by heatstroke or a non-pollutant chemical, and subsequently

---

[6] "Of the same kind."

8

fell into the sludge only then to be injured by contact with hydrogen sulfide, they could not allege injury by a pollutant because heat is not a pollutant under the policy, and any injury sustained would have been caused only by direct contact with the sludge, which Motiva also claims is not a pollutant.

Citing Certain Underwriters at Lloyd's London v. C.A. Turner Construction Co., 112 F.3d 184, 186-88 (5th Cir. 1997), Motiva contends that the "common-sense approach" used in this circuit to define what constitutes a pollutant within the meaning of a pollution exclusion clause permits indemnification. Under that approach, the terms of a pollution exclusion clause must be given their ordinary meaning so that the clause is not illogically or impermissibly broadened. See, e.g., id. at 188 (explaining that although Drano is toxic, slipping on the contents of a spilled Drano bottle is not a pollutant-related injury). Motiva suggests that since "petroleum products are not pollutants when they are stored where they belong," a hydrogen-sulfide-related injury caused by direct skin-to-sludge contact in the storage tank cannot be considered injury by a pollutant.

Although clever, this argument is legally incorrect. Importantly, the policy at issue in Certain Underwriters did not define the term "pollutant," see id. at 186, whereas the policy at issue here does define "pollutant" and does so broadly, see supra, note 3. Additionally, the Certain Underwriters court held that the pollution exclusion in that case did apply because the emission of

9

harmful fumes from gas in a welding pipe is distinguishable from a small spill of Drano. <u>Certain Underwriters</u>, 112 F.3d at 188. Similarly, the Duriso Plaintiffs allege they were exposed to such high levels of toxic substances that brain damage resulted – not a slight exposure that would ordinarily cause no harm.

Motiva ignores entirely the substantial body of caselaw holding that substances need not be released into the surrounding environment to qualify as pollutants for purposes of a pollution exclusion clause. <u>See, e.g.</u>, <u>id.</u> at 188 (pollution exclusions are not limited "to only those discharges causing environmental harm"); <u>Hamm v. Allstate Ins. Co.</u>, 286 F. Supp. 2d 790, 794-95 & n.2 (N.D. Tex. 2003) (pollution exclusion barred insurer's duty to defend when injury resulted from indoor accumulation of toluene fumes during an office renovation); <u>Zaiontz v. Trinity Universal Ins. Co.</u>, 87 S.W.3d 565, 571-72 (Tex. App. 2002) (injury caused by "odor eliminator" chemical that was confined to its proper area of application triggered pollution exclusion). Thus, a pollution exclusion clause applies whenever a pollutant causes harm by a physical mechanism enumerated in the policy, irrespective of where the injury took place or whether the pollutant was released into the environment. Here, as in <u>Zaiontz</u> and <u>Hamm</u>, the area in which the pollutant was properly confined was itself the site of the injury. The fortuity that the locus of storage and injury happen to coincide does not negate the Pollution Exclusion in this instance.

10

### 3. Causation

Finally, Motiva contends that since the Duriso Plaintiffs do not specifically explain the causal mechanism by which they were injured, their damages are not excludable under the clause.

Texas law recognizes two types of causation relevant to interpretation of the pleading language at issue here. In cases involving "separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion." Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 204 (Tex. 2004) (citing Guaranty Nat'l Ins. Co. v. N. River Ins. Co., 909 F.2d 133, 137 (5th Cir. 1990)). Conversely, in cases involving "concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries. Because the two causes cannot be separated, the exclusion is triggered." Id. (citing Travelers Indem. Co. v. Citgo Petroleum Corp., 166 F.3d 761, 771-72 (5th Cir. 1999)).

Motiva argues that there are two independent and discrete events at issue in the Duriso Plaintiffs' suit: (1) the Plaintiffs' being "overcome"; and (2) the Plaintiffs' contact with the sludge. Motiva claims that the first event is not excludable under the policy because the Plaintiffs have not specifically alleged that they were overcome by a pollutant; heatstroke or a non-pollutant could also be to blame. The second event, says Motiva, is not an

11

excludable injury because properly stored sludge cannot be a pollutant. Thus, since the pleadings can be read to indicate that Plaintiffs' injuries were independently caused by an event not covered by the policy, United National has a duty to indemnify.

Motiva's causation argument fails because the pleadings unambiguously allege, as we have noted, that the injuries were sustained both by exposure to excluded pollutants <u>and</u> by direct contact with the sludge. Although the mechanism of injury is not explicitly described, the pleadings allege that the pollutant-related injuries arose concurrently out of inhalation and contact with the sludge. Thus, the concurrent causation doctrine precludes United National's duty to indemnify.

### B. Contractors Limitation Endorsement

Motiva additionally cites the umbrella policy's Contractors Limitation Endorsement ("CLE") clause, arguing that the CLE provides coverage even if the Pollution Exclusion applies. The CLE excludes Motiva from coverage for any tort liability assumed by Hydro Tank under its contract with Motiva, unless coverage for the assumed liability is available pursuant to the underlying CGL policy.[7] Motiva argues that since Hydro Tank assumed liability for

---

[7] The relevant CLE language states:

III. Except insofar as coverage is available to the insured in valid and collectible 'underlying insurance' [i.e., the American Equity policy]...and then only for such liability for which coverage is afforded under the 'underlying insurance' for the full limit shown, this insurance does not apply to:
    (a) Any liability assumed by any insured under any contract or agreement;...

the Duriso claims under its contract with Motiva, and those losses were covered by the CGL, the umbrella policy therefore adopts the coverage of the CGL with regard to Motiva's liability. As a result, says Motiva, the Pollution Exclusion is irrelevant to the entire indemnity question because the CLE permits coverage for the Duriso claims irrespective of the Pollution Exclusion. In contrast, United National argues that the CLE does not nullify the Pollution Exclusion and that the CLE cannot be read to create coverage that does not otherwise exist.

Both Texas insurance law and the language of the umbrella policy support United National's argument. An exclusion like CLE § III(a) cannot affirmatively grant coverage that would not otherwise exist under the policy and is to be read independently of every other exclusion contained therein. See Forbau v. Aetna Life Ins. Co., 876 S.W.2d 132, 133-34 (Tex. 1994) (coverage excluded under a specific policy provision cannot be reinstated by another more general grant of coverage). Moreover, each policy provision is, to the greatest extent possible, to be given independent significance and effect. See id. at 133; Barnett v. Aetna Life Ins. Co., 723 S.W.2d 663, 666 (Tex. 1987). No single provision should be interpreted in isolation from the rest of the policy. See Forbau, 876 S.W.2d at 134.

Motiva's CLE claim ignores these maxims. What Motiva's argument amounts to is that the prefatory language of CLE § III creates an exception not only to the exclusions contained in CLE § III(a)-(c), but to every exclusion contained in the United National policy – including the Pollution Exclusion. Put otherwise, CLE § III overrides all other policy provisions. Accepting this argument would require this court to disregard the explicit exclusion provisions that comprise most of the United National policy, which plainly state that "[t]his insurance does not apply to" several enumerated types of property damage and bodily injury, including injury by pollutants. Motiva provides no legitimate basis upon which the language of CLE § III can be construed to reach such a sweeping result.

Moreover, the authority Motiva cites in support of its expansive reading of the CLE is distinguishable. In XL Specialty Insurance Co. v. Kiewit Offshore Services, Ltd., 336 F. Supp. 2d 673 (S.D. Tex. 2004), the district court interpreted an umbrella policy with a CLE clause identical to the instant one to permit the kind of follow-form coverage Motiva advocates. Id. at 676. Significantly, however, the CLE at issue in XL Specialty did not contain additional relevant exclusion clauses, such as a pollution exclusion. Thus, the XL Specialty court never considered the only question relevant to Motiva's argument: whether additional exclusionary clauses contained in an umbrella policy are trumped by a CLE exclusion.

14

Motiva also cites Gould, Inc. v. Arkwright Mutual Insurance Co., 907 F. Supp. 103 (M.D. Pa. 1995). Like the policy in XL Specialty, the Gould policy contained a CLE that permitted follow-form coverage according to the terms of the underlying insurance. See id. at 106. Unlike United National's CLE language, however, the policy language found to grant coverage in Gould was part of a specific exception to the pollution exclusion clause. See id. at 106-07 ("This policy shall not apply, unless insurance is provided by a policy listed in the schedule of underlying insurance...to any liability of any insured arising out of the discharge, dispersal, release or escape of...pollutants.").[8] The instant policy contains no such exception. Accordingly, the district court correctly noted that applying the logic of Gould to the instant policy would "be at odds with the Texas canons of interpretation."

A recent decision of the Texas Supreme Court further contradicts Motiva's claim. In Fiess v. State Farm Lloyds, 202 S.W.3d 744 (Tex. 2006), the court interpreted a homeowners' policy that excluded any "loss caused by mold," but permitted any "ensuing loss" for water damage that would otherwise be covered

---

[8] Moreover, the court determined that the Gould policy was ambiguous, and the ambiguity must be resolved in favor of the insured. Id. at 108. Here, courts have held that so-called "absolute pollution exclusions" substantially indistinguishable from the instant policy's are unambiguous as a matter of law. See Certain Underwriters, 112 F.3d at 186-88; Constitution State Ins. Co. v. Iso-Tex Inc., 61 F.3d 405, 409 (5th Cir. 1995); Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc., 907 S.W.2d 517, 521-22 (Tex. 1995) (per curiam).

15

under the policy. Because mold-related losses were explicitly barred by the mold exclusion, the court opined that the "ensuing loss" clause could not create mold-loss coverage even though the mold damage arose in part because of water damage. See id. at 748-52. In so ruling, the court reaffirmed the general interpretive maxim that a general clause permitting coverage cannot render ineffective another clause that contains a specific and unambiguous coverage exclusion. See Forbau, 876 S.W.2d at 133-34. Motiva's reading of the United National CLE would require this court to hold that an exception to an exclusion contained in an umbrella policy's CLE can impliedly neutralize all other specific exclusions to coverage. We decline to reach this anomalous result.

## III. CONCLUSION

The Duriso plaintiffs alleged that they were injured, in whole or in part, by the release of hydrogen sulfide, a pollutant. Thus, the policy's Pollution Exclusion is invoked. Because the CLE cannot trump explicit exclusions and create coverage where it would otherwise not exist, Motiva's claim for indemnification must also fail.

**AFFIRMED.**

16