United States Court of Appeals,

Fifth Circuit.

No. 94-20574.

The CONSTITUTION STATE INSURANCE COMPANY, Plaintiff-Counter-Defendant-Appellee,

v.

ISO-TEX INC., Iso-Tex Diagnostics, Inc., Bio-Tex Laboratories, Inc., Defendants-Counter-Plaintiffs-Appellants.

Aug. 21, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES and PARKER, Circuit Judges, and KAZEN[*], District Judge.

EDITH H. JONES, Circuit Judge:

In this insurance coverage dispute, the district court granted summary judgment for Constitution State Insurance Co., denying coverage to the insureds, Iso-Tex, Inc., Iso-Tex Diagnostics, Inc., and Bio-Tex Laboratories, Inc. (hereinafter, "Iso-Tex") for liability to individuals injured by nuclear waste stored at Iso-Tex's facilities. With the case submitted in part on an Agreed Stipulation of Facts, the district court relied upon an absolute pollution exclusion in the policy. Iso-Tex appeals, suggesting that the pollution exclusion does not apply to nuclear risks, or is ambiguous and should be interpreted in its favor. We do not agree and therefore affirm.

I. Factual Background

The insureds are in the business of handling, transporting,

[*]District Judge of the Southern District of Texas, sitting by designation.

storing, and disposing of radioactive medical waste. Iso-Tex disposes of the radioactive medical waste by storage on its premises in Friendswood, Texas. Iso-Tex held three commercial general liability policies from Constitution State. The parties agree that two of those policies do not apply, and coverage is sought only under Policy No. CP 119455 ("the policy").

Iso-Tex was sued in a Texas state district court by plaintiffs alleging wrongful death, personal injuries and "survivor" claims "resulting from Iso-Tex's alleged deposit of "enormous quantities of hazardous radioactive materials ... in close proximity to the plaintiff's [sic] residences without the knowledge or warning to the plaintiffs.' " Stipulated Facts, ¶ 3. Judgment was entered against Iso-Tex for $7,000,000. Constitution State denied coverage for the claims in that lawsuit, spawning this case.

The policy contained a "Nuclear Energy Liability Exclusion Endorsement (Broad Form)" and an "Absolute Pollution Exclusion." While the district court ruled that the "Nuclear Energy Liability Exclusion Endorsement" did not exclude coverage for the claim in the underlying lawsuit, she also decided that the "Absolute Pollution Exclusion" did bar coverage, and granted the insurer's motion for summary judgment.

## II. Discussion

The interpretation of an insurance contract, including the question whether the contract is ambiguous, is a legal determination, which, like the court's summary judgment, is reviewed *de novo* on appeal. *National Union Fire Ins. Co. v. Kasler Corp.,* 906 F.2d 196, 198 (5th Cir.1990). In Texas, insurance

contracts are interpreted by the same rules as are other contracts. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex.1994). If an insurance policy is worded so that it can be given only one reasonable construction, it will be enforced as written. *State Farm Fire & Cas. Co. v. Reed,* 873 S.W.2d 698, 699 (Tex.1993). Only where a contract of insurance is susceptible to more than one reasonable interpretation must there be resort to the rule requiring adoption of the interpretation most favorable to the insured. *Id.*

The "Absolute Pollution Exclusion"[1] contained in the policy reads as follows:

EXCLUSION—ALL POLLUTION (ABSOLUTE)[2]

This insurance does not apply to:

(1) "Bodily injury" or "property damage" arising out of the permanent or transient contamination of the environment by pollutants.

(2) Any loss, cost, or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

---

[1]The District Court's wording of the provision in its Order of March 3, 1994 was incorrect, but not materially so.

Iso-Tex argues that the "Absolute Pollution Exclusion" was not contained in the "Stipulated Facts" and was therefore improperly considered by the district court. However, the exclusion appeared in the policy, which was an exhibit to the stipulated facts. No more was necessary to put the policy into the record. The district court specifically found that the insurer had appropriately preserved this argument by raising it in its original complaint.

District Court's Order of November 16, 1993, p. 1-2.

[2]The insurer added the following words in bold, capital letters at the top of the page: "THIS ENDORSEMENT CHANGES THE POLICY. READ IT CAREFULLY."

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Iso-Tex argues that the policy exclusion does not cover biomedical nuclear waste as a matter of law, or alternatively that the clause is ambiguous. Iso-Tex first avers that "nuclear waste as handled by Iso-Tex has not been shown to be pollution." However, the definition of pollution in the above clause includes "any ... contaminant, including ... waste." The parties have stipulated that Iso-Tex is "in the business of handling, transporting, storing, and disposing of medical waste."

Iso-Tex next contends that if its biomedical nuclear waste were considered "pollution," then there would have been no need for the separate "Nuclear Energy Liability Exclusion Endorsement (Broad Form)" found in the policy in question. This argument holds no water; the nuclear exclusion only applies to "nuclear material" at a "nuclear facility" or to injuries for which the insured is also insured by "a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association." Stipulated Facts, ¶ 9. This exclusion does not apply to Iso-Tex, whose activities, as found by the district court, do not involve "nuclear material" of that type, and whose operations do not fall within the definition of a "nuclear facility." Further, Iso-Tex's nuclear liability carrier denied coverage under a separate nuclear policy. Accordingly, it is perfectly logical that Constitution State would include both a nuclear liability exclusion for certain nuclear operations that might be covered by separate insurance, and an "Absolute Pollution Exclusion." The two clauses exclude separate,

but potentially overlapping types of conduct. The existence of a nuclear exclusion does not prove that Iso-Tex's nuclear waste is not pollution.

Iso-Tex further observes that its prior policies from Constitution State contained "Absolute Nuclear Exclusion" clauses applying to any "injury or damage to or arising out of any nuclear device, radioactive material, isotope, ... or any other chemical element having an atomic number above 83 or any other material having similar properties of radioactivity." Because this provision, which, Iso-Tex contends, would have excluded liability for the underlying claims, was dropped from the subject policy, "it would seen [sic] plausible that both parties understood the risk to be insured to be the nuclear risk and that the "Absolute Pollution' Exclusion would not apply to that risk." Iso-Tex seeks, in other words, to manufacture an ambiguity from a comparison of the previous and present policies. Iso-Tex supported this argument in the district court with reference to industry custom and the clauses' regulatory history before the Texas Insurance Board.

The problem with this argument is that it has been squarely rejected by the Texas Supreme Court in interpreting a policy containing a similar "absolute pollution exclusion":

> If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous. Parol evidence is not admissible for the purpose of creating an ambiguity.

> If, however, the contract is reasonably susceptible to more than one meaning, it is ambiguous. Whether a contract is ambiguous is a question of law for the court. Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretations, and admit extraneous evidence to determine the true meaning of the instrument.

When the language of the policy or contract is susceptible to more than one reasonable construction, it is patently ambiguous. A patent ambiguity is evident on the face of the contract. A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears by reason of some collateral matter. The circumstances surrounding and underlying the contract are first applied to the subject matter of the agreement. If a latent ambiguity arises from this application, parol evidence of the parties' true intentions is admissible....

The ambiguity must become evident when the contract is applied to the surrounding circumstances, not after parol evidence is admitted to create an ambiguity.

*National Union Fire Ins. Co. v. CBI Indus., Inc.,* --- S.W.2d ----, ----, 38 Tex.Sup.Ct.J. 332, 1995 WL 92215, *2 (Tex. March 2, 1995) (citations and footnotes omitted, emphasis added). In *National Union,* the Texas Supreme Court reversed an intermediate court decision that had remanded for further discovery to examine a potential latent ambiguity in certain absolute pollution exclusion clauses. The intermediate court based its opinion on precisely the same "industry custom" and regulatory history discussion offered by Iso-Tex in this case. Construing exclusions substantially similar to that in the policy *sub judice*[3], the Texas Supreme Court held:

Courts usually strive for uniformity in construing insurance provisions, especially where, as here, the contract provisions are identical across jurisdictions. Most courts which have examined the same or substantially similar absolute pollution

_____

[3]The National Union policy before the State Supreme Court stated:

This policy does not apply to ... any Personal [*3] Injury or Property Damage arising out of the actual or threatened discharge, dispersal, release or escape of pollutants, anywhere in the world; ... "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste material. Waste materials include materials which are intended to be or have been recycled, reconditioned or reclaimed.

> exclusions have concluded that they are clear and unambiguous. "This pollution exclusion is just what it purports to be—absolute ... *Alcolac[, Inc. v. California Union Ins. Co.]*, 716 F.Supp. 1546, 1549 (D.Md.1989). We agree. The language in this pollution exclusion is clear and susceptible of only one possible interpretation in this case.

*Id.* at *3, at ---- (emphasis added). Iso-Tex relied heavily on the reasoning of the intermediate court in its briefs to this court; the reversal of that court's decision is fatal here.

Certainly, there is no "patent ambiguity" as that term is defined by *National Union, supra. See also, Tri County Svc. Co. v. Nationwide Mut. Ins. Co.,* 873 S.W.2d 719, 721 (Tex.App.—San Antonio 1993, writ denied) ("On the basis of the plain language of the exclusion in question, virtually all courts in other jurisdictions which have considered such an exclusion have found that it precludes *all* coverage of *any* liability arising out of the release of pollutants." (emphasis in original)). Iso-Tex argues, however, that the pollution exclusion is patently ambiguous when the "waste" in question is nuclear waste, in part because nuclear operations are covered by a separate exclusion in this and other similar policies. Iso-Tex cites no authority or rationale for the distinction. Given the strict rules of construction against a drafter, an insurance provider would be motivated to draft overlapping and redundant clauses which exclude coverage for the same conduct. The existence of various "nuclear exclusions" in a policy does not make them less comprehensive nor require that the words "pollution" or "waste" be given other than their ordinary meanings.

Iso-Tex makes a related argument that ambiguity exists in the meaning of the word "waste" in the policy. Specifically, Iso-Tex

contends that "[a] reasonable interpretation of waste would be that it is material that is to be "recycled, reconditioned, or reclaimed' and a pollutant including any solid, liquid, gaseous or thermal irritant or contaminant, such as "smoke, vapor, soot, fumes, acids, alkalis, chemicals' and not nuclear." This contrived attempt at a definition of waste is based on Iso-Tex's earlier argument that the existence of other exclusions dealing with nuclear material necessitates the interpretation of the term "pollutants" to exclude all things nuclear. The cases cited by Iso-Tex are inapposite. The court in *In Re Hub Recycling, Inc.,* 106 B.R. 372, 374 (D.N.J.1989) found coverage for a claim of trespass from dumping of construction debris because for waste to be pollutant, it must be an irritant or contaminant. Similarly, in *West Bend Mutual Ins. Co. v. Iowa Iron Works, Inc.,* 503 N.W.2d 596, 600 (Iowa 1993), the court found coverage for a claim arising out of the dumping of clean sand. The Iowa Supreme Court found "waste" had a narrower meaning in the "Absolute Pollution Exclusion" than it did in Iowa's anti-dumping statute, and thus a claim arising from improper disposal of waste (under Iowa law) was covered where the dumped waste was not an "irritant or contaminant." In *Minerva Enterp. Inc. v. Bituminous Cas. Corp.,* 312 Ark. 128, 851 S.W.2d 403, 406 (1993), the Arkansas Supreme Court found coverage for a claim of damage to a mobile home flooded as a result of negligent maintenance of a septic system because the exclusion did not apply to "common household waste" but instead only to "industrial pollutants." None of these holdings benefits Iso-Tex, because its radioactive waste was clearly a contaminant and Iso-Tex cannot deny

that it is an "industrial polluter."

Neither do we find this to be a case of "latent ambiguity" in the application of the policy to the surrounding circumstances. As in *National Union,* the stipulated surrounding circumstances appear to be fully developed and unproblematic. The underlying claim for bodily injury arose out of Iso-Tex's alleged contamination of residences with "waste."

Iso-Tex has failed to produce any evidence of a patent or latent ambiguity. In light of the Texas Supreme Court's holding in *National Union,* the district court correctly interpreted the "Absolute Pollution Exclusion" and found that Constitution State owes no coverage or indemnity for the claims for bodily injury arising out of contamination by nuclear waste.[4]

Additionally, Iso-Tex claims summary judgment was improper because Constitution State "misrepresented the type of policy Iso-Tex was purchasing and should be estopped from denying coverage." As the record does not indicate that this contention was presented to the district court or that any evidence was adduced to support it, the argument is deemed waived.

III. CONCLUSION

---

[4]Iso-Tex also argued for coverage on the grounds of its "reasonable expectations." This court needs not address Iso-Tex's "reasonable expectations" argument in light of the absence of ambiguity. *National Union,* supra. However, the argument lacks merit as Texas law does not recognize coverage because of "reasonable expectation" of the insured. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 134 (Tex.1994) ("[N]either conflicting expectations nor disputation is sufficient to *create* an ambiguity.") (on rehearing, vacating its prior opinion). Justice Doggett, writing in dissent, would have considered "reasonable expectations." *Id.* at 140 & n. 8 (Doggett, J., dissenting and dissenting from rehearing). This is of little help to Iso-Tex.

Summary declaratory judgment for the insurer was proper because the policy expressly and absolutely excluded coverage for the nuclear waste pollution which gave rise to the underlying claim.

For the foregoing reasons, the decision of the district court is AFFIRMED.