**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

99-30132

RICHARD L. WHITTAKER,

Plaintiff-Appellant

versus

BELLSOUTH TELECOMMUNICATIONS, INC.
CAREER ALTERNATIVE PLAN FOR MANAGEMENT
EMPLOYEES,

Defendant-Appellee,

Appeal from the United States District Court
for the Middle District of Louisiana
March 23, 2000

Before FARRIS[*], WIENER, and STEWART, Circuit Judges

CARL E. STEWART, Circuit Judge:

This case involves an appeal from the district court's grant of summary judgment. For reasons assigned below, we affirm.

Factual and Procedural Background

Richard Whittaker ("Whittaker")  was an employee of a subsidiary of BellSouth Telecommunications, Inc. ("BST") and a member of the BST Career Alternative Plan for management employees ("CAP").  CAP is an employees benefit plan governed under the Employee Retirement Income Security Act of 1974 ("ERISA") that provides a separation benefit for eligible

_____

[*] Circuit Judge of the Ninth Circuit, sitting by designation.

management employees who voluntarily separate employment for the purpose of pursuing education, teaching, or community service opportunities for a period not to exceed three years. In October 1995, Whittaker submitted an application for CAP benefits. Whittaker's CAP application was denied by Stephen Kirkmeier, his department head. Whittaker contends that he was told by Kirkmeier and his district sales manager that his CAP benefits were denied because there was no employee surplus of persons in his job position, and that the denial of his CAP benefits was a "business decision." Whittaker did not receive a written rejection of his benefits claim. In December 1995, Whittaker's attorney sent a letter to BST stating that Whittaker was making a "claim for CAP benefits." The letter also stated that Whittaker believed that he had received an oral denial of his initial benefits claim and that if BST found that Whittaker had already submitted a claim, the letter should be regarded as an appeal. A human resource manager wrote a response to Whittaker's letter on December 14, 1995 which stated that Whittaker's "appeal" was being processed.

In January 1996, Whittaker received another letter from BST which stated that a team of Human Resources Managers and the CAP coordinator "found no evidence to support the claim." Whittaker states that this January review was conducted by the BST CAP Review committee. BST maintains that the January review was only conducted by a CAP coordinator. Prior to Whittaker's December "appeal" for CAP benefits and the January review of his CAP claim, in November 1995 Whittaker's department offered him a Discretionary Termination Allowance Plan ("DTAP"). In February 1996, Whittaker accepted these DTAP benefits and signed a waiver which stated that he would waive, discharge, and release all claims against BST.

In January 1997, Whittaker filed an action in federal district court under 29 U.S.C. § 1132(a)(1)(B) ("§ 1132(a)(1)(B)") challenging BST's denial of CAP benefits. On October 31, 1997 the district court entered an order that stayed the proceedings until Whittaker exhausted his administrative remedies. In January 1999, the district court entered summary judgment for BST finding that the administrator's decision to deny Whittaker CAP benefits was not an abuse of

discretion because Whittaker's participation in the BST DTAP barred him from receiving BST CAP benefits.  Whittaker now appeals the district court's rulings.

Discussion

We review a district court's grant of summary judgment de novo.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986);  Todd v. AIG Life Ins. Co., 47 F.3d 1448, 1451 (5th Cir.1995).  Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In making this determination, we must evaluate the facts in the light most favorable to the non-moving party.  Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356;  Todd, 47 F.3d at 1451.

Moreover, when we are called to interpret an ERISA-covered policy in cases involving the denial of benefits challenged under  § 1132(a)(1)(B), we construe the terms of the plan de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989);  Todd, 47 F.3d at 1451; Harms v. Cavenham Forest Indus., 984 F.2d 686, 688 (5th Cir.1993).  In the present case, the BST CAP provisions on plan administration state that the CAP Review committee has "been delegated the sole and complete discretionary authority to resolve benefit claim appeals under BST CAP."  Therefore, under the plain language of the plan itself the plan administrator had discretionary authority, and thus the administrator's decision should be reviewed under the abuse of discretion standard.

Application of the abuse of discretion standard may involve a two-step process.  Wildbur v. ARCO Chemical Co, 974 F.2d 631, 637 (5th Cir. 1992).  First, the court must determine if the plan administrator's interpretation of the plan was legally correct.  Id.  Second, if the administrator's interpretation of the plan was *not* legally correct the court should then determine whether the administrator's decision was an abuse of discretion.  Id.  In determining whether the plan administrator's interpretation of the plan was legally correct a court must consider: 1) whether the

3

administrator gave the plan a uniform construction, 2) whether the interpretation is consistent with a fair reading of the plan, and 3) any unanticipated costs resulting from different interpretations of the plan. Id. at 638.

Our review of the record reveals that the BST CAP administrators gave CAP a legally correct interpretation. First, BST CAP provisions specifically provide that "managers are not eligible for participation in BST CAP if . . . they separate from the participating company under the provisions of the DTAP or any other management severance plan." Whittaker argues that this provision should not be dispositive in his case because he did not accept the DTAP benefits until after he had applied for CAP benefits and been rejected. However, CAP does not specifically state that an employee will only be disqualified from CAP if they accept DTAP benefits *before* applying for CAP. Instead it appears that any acceptance of DTAP benefits disqualifies an employee from CAP benefits. Whittaker has presented no evidence to indicate that this DTAP exclusion was not applied to other employees. Furthermore, this interpretation is a fair reading of the plan, because CAP is meant to give BST employees the opportunity to voluntarily leave BST to pursue further education, teaching, or community service not in excess of three years. Thus, acceptance of termination of employment under DTAP would be inconsistent with these CAP goals.

Whittaker further argues, however, that the district court should not have decided whether the administrators abused their discretion based on his acceptance of DTAP benefits. Instead Whittaker asserts that during the initial claim process he was told in his various interactions with BST representatives that his CAP benefits had been denied because he was not in a job position that had a surplus of employees. Furthermore, Whittaker was told that losing a trained person in his position might make his division unable of meeting its commitments and business needs. As such, Whittaker contends that these original reasons given by BST were not legally correct interpretations of CAP.

However, even if we were to limit our review to the original reasoning given by BST, the plan administrators nonetheless gave a legally correct interpretation of the plan. First, the plan was given uniform construction. Although Whittaker argues that three other employees in his same position

were given CAP benefits, nevertheless, BST demonstrated that two of those employees were not in the same job position as Whittaker. Furthermore, the other employee had been given CAP benefits before BST knew that losing employees in Whittaker's division might prevent the division from meeting its yearly goals. Therefore, both the DTAP reasoning and the business needs reasoning put forth by BST were legally correct interpretations of the plan. Thus, the plan administrators did not abuse their discretion in denying Whittaker CAP benefits.[1]

### Conclusion

We AFFIRM the district court's grant of summary judgment. AFFIRMED.

---

[1] Whittaker also challenges the district court's order to stay the proceedings until his administrative remedies were exhausted. Our review of the record reveals Whittaker exhausted his administrative remedies before filing his suit in federal district court. A plaintiff may exhaust their administrative remedies by first filing a claim for benefits and then appealing denial of that claim. See Hagaer v. Nationsbank, 167 F.3d 245, 248 (5th Cir. 1999). In the instant case, Whittaker applied for CAP benefits directly to his supervisor. In Whittaker's December 5 letter, he stated that the letter should be treated as an appeal if BST had received Whittaker's first claim for CAP benefits. Before sending the letter, Whittaker was verbally denied the CAP benefits by his supervisor. Additionally, BST's initial response from the December letter stated that Whittaker's "appeal" was being processed. Thus, under these circumstances, the district court erred when it ruled that Whittaker failed to exhaust his administrative remedies. Nonetheless, we find the error harmless because, as established above, Whittaker's acceptance of DTAP benefits barred him from claiming benefits under CAP.