**ATLANTIC CASUALTY INSURANCE COMPANY, Plaintiff,**

v.

**Robert RAMIREZ, individually and d/b/a LBJ Trucking Co., Inc., LBJ Trucking Co., Inc., Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem, and Clarence "Casey" Clem, Jr., Defendants.**

No. 3:07–CV–1297–F.

United States District Court,
N.D. Texas,
Dallas Division.

Sept. 2, 2009.

Camille Johnson, William A. Reece, Savrick Schumann Johnson McGarr Kaminski & Shirley, Dallas, TX, Gary N. Schumann, Savrick Schumann Johnson McGarr Kaminski & Shirley, Austin, TX, for Plaintiff.

Cody L. Towns, Amber Erin Kelm, Rodriguez Ghorayeb & Gersch LLP, Abigail B. Moore, Vincent J. Hess, Locke Lord Bissell & Liddell LLP, John W. Slates, Eric C. Lugger, Gardere Wynne Sewell, John M. Cox, John M. Cox & Associates

PC, Dallas, TX, Jonathan M. Buck, Stephen C. Dickman, Kelly Hart & Hallman, Austin, TX, for Defendants.

## ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS, CONCLUSIONS AND RECOMMENDATION

ROYAL FURGESON, District Judge.

BEFORE THE COURT are Magistrate Judge Paul Stickney's Findings, Conclusions, and Recommendation report (Docket No. 58), filed August 5, 2008; Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment and Brief in Support (Docket Nos. 17 and 18), filed October 22, 2007; The LBJ Defendants' Response to Atlantic's Motion for Summary Judgment (Docket No. 24), filed November 27, 2007; Atlantic's Reply to the LBJ Defendants' Response (Docket No. 27), filed December 12, 2007; Atlantic's Objection to and Motion to Strike LBJ Defendants' Summary Judgment Evidence (Docket No. 29), filed December 12, 2007. LBJ Defendants' Response to Atlantic's Motion to Strike (Docket No. 32), filed January 2, 2008; Atlantic's Reply to LBJ Defendants' Response (Docket No. 33), filed January 17, 2008; Clem Defendants' Response and Amended Response in Opposition to Atlantic's Motion for Summary Judgment (Docket Nos. 42 and 51), filed July 9, 2008; and Atlantic's Reply to Clem Defendants' Response (Docket No. 53), filed July 24, 2008.

Upon consideration of the parties' briefings, the facts, and the applicable law, the Court is of the opinion that the Magistrate Judge's Findings, Conclusions, and Recommendation (Docket No. 58) should be ADOPTED and Plaintiff Atlantic Casualty Insurance Company's Motion for Summary Judgment (Docket No. 17) should be GRANTED.

### Background

On July 25, 2007 Atlantic Casualty Insurance Company ("Atlantic") brought this action against Defendants Robert Ramirez ("Ramirez"), individually and doing business as LBJ Trucking Co., Inc. ("LBJ Trucking") (collectively the "LBJ Defendants"), and Defendants Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem, and Clarence T. "Casey" Clem, Jr. (collectively the "Clem Defendants"). Atlantic seeks a declaratory judgment regarding defense and indemnity coverage under certain commercial general liability policies between Atlantic and the LBJ Defendants (the "Policies"). The Clem Defendants are included as parties in this Declaratory Judgment Action because they are potential judgment creditors of the LBJ Defendants in the Underlying Lawsuit.

Atlantic insured LBJ Trucking Co., Inc., of which Ramirez is either an officer or director, under commercial general liability policies. *Plaintiff's Brief in Support* at ¶ 6. The Clem Defendants contracted with Briscoe Land Reclamation to supply "clean fill material" to their property on Parker Road in Carrollton, Texas. *Id.* at ¶ 4. The LBJ Defendants are alleged to have transported the fill material, which the Clem Defendants allege was not clean fill material but rather "solid waste (as defined under federal law and Texas law ...), including without limitation foundry sand and other foundry refuse ... as well as brush, trees, wood grindings ... other woody materials, and construction and demolition debris." *Clem Defendants' Fourth Amended Complaint*, 2008 WL 2907085, at ¶ 1. The Clem Defendants allege that the fill material is environmentally unsuitable for their land, and, "presents an imminent and substantial endangerment to individuals and the environment." *Id.* at ¶ 9. The Clem Defendants have filed suit ("Underlying Lawsuit") against the LBJ Defendants, amongst others, for violations of the federal Resource Conservation Recovery Act ("RCRA"), the Texas

Health and Safety Code, and under Texas common law, in order to "remedy the storage and disposal of Solid Waste by [the Underlying Lawsuit"] Defendants. *Id.* at ¶ 1–2.

The LBJ Defendants have demanded defense and indemnity coverage under the Policies against the Clem Defendants' allegations in the Underlying Lawsuit. *Plaintiff's Brief in Support* at ¶ 7. Atlantic has been paying the LBJ Defendants' defense in the Underlying Lawsuit under an express right of reservation to contest coverage and now seeks a declaratory judgment that Atlantic has no duty to defend or indemnify the LBJ Defendants because of the Total Pollution Exclusion and Claims in Process provisions in the Policies. *Plaintiff's Brief in Support* at ¶ 7–10. Atlantic now moves for summary judgment in this action.

## Standard of Review

Summary judgment procedure is a method used by the Court to promptly dispose of an action in which there is no genuine issue of material fact. Summary judgment is proper only when "the pleadings, the discovery, and disclosure materials along with the affidavits ... show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). (citing Fed. R.Civ.P. 56(c)).

When determining whether a genuine issue of material fact exists, the Court must consider "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When a party moves for summary judgment they bear the burden of identifying those portions of the record which they believe demonstrate that no genuine issue of material fact exists. *OOIDA Risk Retention*

*Group, Inc. v. Williams,* 544 F.Supp.2d 540, 542 (N.D.Tex.2008). (citing *Celotex* at 322–25, 106 S.Ct. 2548).

Once the moving party has made a properly supported motion, the burden shifts to the non-moving party to demonstrate that summary judgment is inappropriate by going beyond the pleadings and providing depositions, affidavits, and competent evidence which shows that specific facts exist which demonstrate a genuine issue of material fact. *See Whittaker v. BellSouth Telecomm., Inc.,* 206 F.3d 532, 534 (5th Cir.2000). All competent evidence and reasonable inferences must be viewed in a light most favorable to the non-moving party. *Williams* at 542. The Court agrees with the Magistrate Judge's Conclusion that the material facts of this case are not in dispute. *Findings, Conclusions, and Recommendation Report* at ¶ 7.

## Analysis

In a diversity case, a federal court must apply the substantive law of the forum state. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n,* 783 F.2d 1234, 1240 (5th Cir.1986). Under Texas Law, the Court employs the "eight corners" doctrine when determining an insurer's duty to defend, meaning that the Court looks only to the allegations in the underlying plaintiff's pleadings and the language of the insurance policy provisions. *Noble Energy, Inc. v. Bituminous Cas. Co.,* 529 F.3d 642 (5th Cir.2008); *Nat'l Union Fire Ins. Co. Of Pittsburgh, PA v. Merchs. Fast Motor Lines, Inc.* 939 S.W.2d 139, 141 (Tex.1997). If the underlying plaintiff's pleadings allege facts that state a cause of action which may potentially fall within the scope of coverage, the insurer has a duty to defend. *Noble Energy* at 646. Doubtful cases are resolved in favor of the insured. *Id.* However, if the only facts alleged in the complaint are excluded from a policy's coverage provisions, the insurer

does not have a duty to defend. While the Court must interpret the pleadings liberally for the purposes of construing the duty to defend this is not intended to mean that the Court should "adopt unreasonable interpretations of plain language, ignore ordinary usage, or set aside basic rules of construction." *United Nat'l. Ins. Co. v. Hydro Tank, Inc.,* 497 F.3d 445, 448 (5th Cir.2007), *amended on rehearing by* 525 F.3d 400 (5th Cir.2008). The insured bears the initial burden of showing that coverage exists, and once established, the burden shifts to the insurer to show that any policy exclusions apply. *Noble Energy* at 646 (citing *Hydro Tank* at 448).

Under Texas law, the rules of interpretation and construction which are applicable to contracts generally also control insurance policies. *Id.* Determining whether a contract is ambiguous is a question of law for the court to decide, in light of the present circumstances under which the contract was entered. *Id.* (citing *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995)). If the language of the insurance policy can be given a definite or certain legal meaning it is not ambiguous. *Id.* When the policy language can be given a definite or certain legal meaning, extrinsic evidence cannot be presented. *See Id.*

### A. Pollution Exclusion Provision

This Court is convinced that the plain language of the pollution exclusion provision in the insurance policy, issued by Atlantic to the LBJ Defendants, excludes coverage of each of the claims asserted by the plaintiffs in the Underlying Lawsuit. The provision in the policy states:

This insurance does not apply to:

f. Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of 'pollutants' at any time.

*Plaintiff's Brief in Support* at Appendix 60, 101.

The term "pollutant" is defined by the initial 2004–05 policy as:

Any solid, liquid, gaseous, or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemical and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

*Plaintiff's Brief in Support* at Appendix 53.

The 2005–06 renewal policy redefines "pollutant", stating:

"Pollutants" means solid, liquid, gaseous, or thermal irritant or contaminant or all material for which a Material Safety Data Sheet is required pursuant to federal, state, or local laws, where ever discharged, dispersed, seeping, migrating, or released, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, sewage; and associated smoke, vapor, soot, fumes, from said substance. Waste includes materials to be recycled, reconditioned, or reclaimed.

*Plaintiff's Brief in Support* at Appendix 101.

The pollution exclusion provision in the LBJ Defendants' liability policies unambiguously precludes coverage for underlying claims arising out of actual or alleged environmental pollution. Similar pollution exclusion provisions have traditionally been directed at precisely the type of claims involving environmental contamination of the character alleged the plaintiffs in the Underlying Lawsuit. *See generally Noble Energy,* 529 F.3d 642; *CBI,* 907 S.W.2d 517. Numerous courts have examined the language of pollution exclusion provision,

including those in Texas and the Fifth Circuit, and the majority of those courts have concluded that their language is clear and unambiguous. *See Noble Energy* at 646; *Hydro Tank* at 448.

### 1. Materials as Pollutants

The Clem Defendants argue that a latent ambiguity exists in the policy language for two reasons: (1) the materials do not qualify as pollutants, and (2) the direct deposit of the material onto their land is not included in the pollution exclusion language which prohibits coverage of damages caused by "discharge, dispersal, seepage, migration, release, or escape". *Clem Defs. Amended Resp.* at ¶ 9. While neither Texas nor Fifth Circuit courts have determined whether the solid waste and substances at issue in this case are pollutants, the Fifth Circuit recently held that the "presumably innocuous basic sediment and water" characterized in the underlying complaint as unwanted waste material indisputably met a similar policy's definition of pollutant. *Noble Energy* at 647.

Based on the Clem Defendants' allegations and Atlantic's policy language, the materials in the Underlying Lawsuit would also fall within the pollution exclusion provision. In their complaint, the Clem Defendants characterized the materials as "solid waste (as defined under federal law and Texas law ...), including without limitation foundry sand and other foundry refuse ... as well as brush, trees, wood grindings ... other woody materials, and construction and demolition debris." *Clem Defendants' Fourth Amended Compl.* at ¶ 1. Moreover, the Clem Defendants allege that the material deposited on their land, "presents an imminent and substantial endangerment to individuals and the environment". *Id.* at ¶ 9. After looking at the pleadings and the language of the policy provision, as well as looking to the plain meaning of the words, the Court agrees

with the Magistrate Judge's conclusion that the Clem Defendants' allegations fall squarely within the pollution exclusion provision. The materials at issue are both waste and contaminants, and thus are properly classified as pollutants.

Additionally, any evidence proffered by the Clem or LBJ Defendants to indicate that the solid waste material is not an irritant is inadmissable under Texas law. In their response, the LBJ Defendants offered evidence refuting the classification of the materials as contaminants. Under Texas law, however, extrinsic evidence is only admissible if, "it is initially impossible to discern whether potential coverage is implicated," and when such evidence, "goes solely to a fundamental issue of coverage which does not overlap with the merits or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co. v. Loving Home Care Inc.*, 363 F.3d 523, 531 (5th Cir.2004). In the present case, no ambiguity exists which would render it impossible to determine any potential coverage implication. Furthermore, allowing evidence in determining whether the waste is also an irritant or contaminant would engage in the truth or falsity of the Clem Defendants' allegations that the materials rendered the land unsuitable.

### 2. Materials Did Discharge, Disperse, Seep, Migrate, Release, or Escape

The Clem Defendants also argue that the pollution exclusion provision does not apply because the damage occurred through the direct deposit of waste onto their property, and not through discharge, dispersal, seepage, migration, release, or escape. *Clem Defs. Amended Resp.* at ¶ 21. To support this argument, the Clem Defendants rely substantially on *Clarendon America Ins. Co. v. Bay, Inc.*, 10 F.Supp.2d 736 (S.D.Tex.1998). The pollution exclusion provision in *Clarendon* is

nearly identical to the one in the present case. In *Clarendon,* the defendants, Bay, maintained that, "the terms 'discharge,' 'dispersal,' and 'pollution' are terms of art, and that the sand, gravel, cement, and silica to which the [underlying] plaintiffs were exposed do not constitute 'pollutants.'" *Id.* at 743. The court, however, found this term of art argument wholly unconvincing, stating "the Fifth Circuit has taken a broader view of these [pollution] exclusions, and has found they are not limited in application to traditional environmental pollution—releases that cause widespread environmental harm", precisely the type of harm alleged by the Clem Defendants. *Id.* at 743.

The *Clarendon* court held that a latent ambiguity existed related to whether coverage was excluded for injuries sustained by direct bodily contact with wet cement while the material was in its intended container. *Id.* at 744. The court held that if the injuries occurred to the underlying plaintiff while the pollutant was in its intended container, the injuries did not stem from "discharge, dispersal, seepage, migration, release, or escape of pollutants." *Id.* The Clem Defendants' reliance on the holding in *Clarendon* is misguided because the alleged damages to their land occurred from the dumping of solid waste on land, in other words, traditional environmental pollution—precisely the sort of damage that a pollution exclusion provision is intended to preclude from coverage.

**B. Duty to Defend Counter–Claims**

The LBJ Defendants also argue that if the Court finds that the Policies do not cover the LBJ Defendants in the Clem Defendants' action, Atlantic still has a duty to defend the LBJ Defendants against counterclaims asserted by Hensley Industries ("Hensley"). *LBJ Defendants' Resp.* at ¶ 12. Atlantic's complaint, however, only seeks, "a declaration from this Court that it has no duty to defend or indemnify

Robert Ramirez or LBJ Trucking or any other insured or Defendant for the claims asserted by the Underlying Plaintiff in the Underlying Lawsuit." *Plaintiff's Compl.* at ¶ 32. Atlantic's complaint does not seek a decision regarding cross-claims or counterclaims in the Underlying Lawsuit, therefore Atlantic's duty to defend or indemnify the LBJ Defendants as to any claims other than those brought by the Clem Defendants in the Underlying Lawsuit are not properly before this Court. Accordingly, this Court makes no determinations regarding those claims.

**C. Duty to Indemnify**

In Texas, the duty to indemnify is distinct from, and narrower than, the duty to defend. *Lincoln Gen. Ins. Co. v. Aisha's Learning Center,* 468 F.3d 857, 858 (5th Cir.2006). An insurer may have an initial duty to defend but it may later be determined on the facts in the underlying lawsuit that there is no duty to indemnify. *Farmers Tex. County Mutual Ins. Co. v. Griffin,* 955 S.W.2d 81, 84 (Tex.1997). If the Court finds no duty to defend, the insurer has no duty to indemnify. *Id.* at 82. Accordingly, because the Court finds that Atlantic has no duty to defend, we also find the Atlantic has no duty to indemnify.

**Conclusion**

For the foregoing reasons, the Court is of the opinion that the pollution exclusion provision in the Policies is unambiguous, and as a result, Atlantic's Objections to and Motion to Strike LBJ Defendants' Summary Judgment Evidence (Docket No. 29) is GRANTED. In light of the Clem Defendants' pleadings and the Policies' provisions, the Court finds that Atlantic has neither the duty to defend nor indemnify the LBJ Defendants against the Clem Defendants' claims in the Underlying Lawsuit. Consequently, the Court need not consider Atlantic's additional arguments

that it has no duty to defend or indemnify under the claims in process exclusion or under the "fortuitous loss" doctrine. Accordingly, Atlantic's Motion for Summary Judgment (Docket No. 17) is GRANTED. It is so ORDERED.

### *FINDINGS, CONCLUSIONS, AND RECOMMENDATION*

PAUL D. STICKNEY, United States Magistrate Judge.

Pursuant to the District Court's Order (doc. 36), Plaintiff Atlantic Casualty Insurance Company's ("Atlantic") Motion for Summary Judgment (doc. 17) has been referred to the United States Magistrate Judge for hearing, if necessary, and recommendation. Defendants Robert Ramirez and LBJ Trucking, Co., Inc. (collectively the "LBJ Defendants") filed a response on November 27, 2007 (doc. 24). Atlantic replied to this response on December 12, 2007 (doc. 27). Atlantic also filed Objections to and Motion to Strike the LBJ Defendant's Summary Judgment Evidence (doc. 29), which is also before this Court. The LBJ Defendants responded to this motion on January 11, 2008 (doc. 32) and Atlantic replied on January 17, 2008 (doc. 33).

After being granted a continuance, Defendants Clem's Ye Olde Homestead Farms, Ltd., Bettye Crider Clem, Clarence Truman Clem, Kelly Clem, and Clarence T. "Casey" Clem, Jr. (collectively the "Clem Defendants") filed their response on June 13, 2008 (doc. 46). This response was amended on July 9, 2008 (doc. 51) after being granted leave by the Court. On July 24, 2008, Atlantic replied to this amended response (doc. 24).

After considering the arguments, this Court recommends that the District Court GRANT Atlantic's motion for summary judgment.

### BACKGROUND

On July 25, 2007, Atlantic brought this action against the LBJ and Clem Defendants. (Pl.'s Compl. at 1.) Atlantic seeks a declaratory judgment concerning certain commercial general liability insurance policies between Atlantic and the LBJ Defendants (the "Policies").

Atlantic insured LBJ Trucking, of which Ramirez is an officer or director, under commercial general liability policies. (Pl.'s Br. Support Mot. Summ. J. at 3.) The Clem Defendants hired Briscoe Land Reclamation to bring "clean fill material" to their land on Parker Road in Carrollton, Texas. (*Id.* at 2.) The LBJ Defendants allegedly transported the fill material to the Clem Defendants' land. (*Id.*) The Clem Defendants claim that the fill material was "solid waste (as defined under federal law and Texas law . . .), including without limitation foundry sand and other foundry refuse . . . as well as brush, trees, wood grindings (sometimes referred to as mulch or compost), other woody materials, and construction and demolition debris." (Clem Def.'s Fourth Amend. Compl. at 1.) The Clem Defendants allege that these materials "present an imminent and substantial endangerment to individuals and the environment." (*Id.* at 9.) As a result, the Clem Defendants sued the LBJ Defendants and others for violations of the federal Resource Conservation Recovery Act ("RCRA"), violations of the Texas Health and Safety Code, and under Texas common law for nuisance, negligence, and trespass. ("Underlying Lawsuit").[1] (*See generally id.*) The Clem Defendants seek damages, injunctive relief, civil penalties,

---

1. *Clem's Ye Olde Homestead Farms, Ltd., et al. v. Briscoe, et al,* No. 4:07–CV–285–RASDDB (E.D.Tex.), filed June 12, 2007.

punitive damages, costs, and attorney's fees. (*Id.* at 23.)

The LBJ Defendants demanded defense and indemnity coverage under the Policies for the Underlying Lawsuit. (Pl.'s Br. Support Mot. Summ. J. at 3.) Atlantic has been paying the LBJ Defendants' defense in the Underlying Lawsuit under a reservation of rights, which reserved Atlantic's rights to challenge the coverage. (*Id.*) Atlantic filed this lawsuit seeking a declaration from the Court that it does not have the duty to defend or indemnify the LBJ Defendants because their conduct was excluded under the Policies. (*Id.*) Atlantic now moves for summary judgment.

## STANDARD OF REVIEW

The Court should only grant summary judgment if there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, the court views the facts in the light most favorable to the non-moving party. *Whittaker v. BellSouth Telecomm., Inc.,* 206 F.3d 532, 534 (5th Cir.2000). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. If the non-movant bears the burden of proof at trial, the summary judgment movant may satisfy his burden by pointing to the absence of evidence supporting the non-movant's case. *Whittaker,* 206 F.3d at 534. At this point, the non-movant must show that summary judgment is not ap-propriate by going beyond the pleadings to demonstrate "specific facts showing that there is a genuine issue for trial." *Id.* Mere conclusory allegations or denials unsupported by specific facts are not enough. *Id.* There must be evidence giving rise to reasonable inferences that support the non-moving party's position. *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987). The material facts in this case are not disputed.

## ANALYSIS

Atlantic seeks summary judgment on its claim that it does not have a duty to defend or to indemnify the LBJ Defendants against claims brought by the Clem Defendants in the Underlying Lawsuit. Atlantic argues that the Policies do not cover the LBJ Defendants' wrongful actions because the Policies contain both a pollution exclusion provision, which excludes coverage for incidents of pollution, and a claims-in-process exclusion, which excludes coverage for events that occur before the policy period began. (Pl.'s Br. Support Mot. Summ. J. at 4.) Atlantic also claims that the Texas common law "fortuitous loss" doctrine, which precludes coverage when the alleged injury began prior to the insurance coverage inception date, prohibits Atlantic's duty to defend or to indemnify. (*Id.* at 5.)

■ "Texas follows the 'eight corners' rule of insurance contract interpretation. The insurer's duty to defend is determined by the underlying plaintiff's pleadings, considered in light of the policy provisions, without regard to the truth or falsity of those allegations." *Noble Energy Inc. v. Bituminous Casualty Co.,* 529 F.3d 642, 645–46 (5th Cir.2008) (citing *United Nat'l Ins. Co. v. Hydro Tank, Inc.,* 497 F.3d 445, 448 (5th Cir.2007), amended on rehearing by 525 F.3d 400 (5th Cir.2008)). The insurer has a duty to defend when the facts

alleged in the pleadings potentially fall within the scope of coverage. *Id.* All doubt is resolved in favor of coverage. *Id.* However, if the complaint in the underlying suit does not allege facts within the scope of coverage, the insurer is not required to defend a suit brought against the insured. *Clarendon Am. Ins. Co. v. Bay, Inc.,* 10 F.Supp.2d 736, 740 (S.D.Tex.1998). The initial burden is on the insured to show that coverage exists. *Noble Energy,* 529 F.3d at 645–46. Once this has been shown, the burden shifts to the insurer to show the applicability of a policy exclusion. *Id.*

■■■ Under Texas law, the rules of interpretation and construction applicable to contracts generally also control insurance policies. *Id.* The Court is limited to the language of the policy when it is unambiguous. *See id.* at 646 (*Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995)). In other words, extrinsic evidence cannot be presented when the policy language can be given a definite or certain legal meaning. *See id.* (citing *Nat'l Union,* 907 S.W.2d at 520). However, extrinsic evidence can be considered when the language of the policy is subject to two or more reasonable interpretations. *See id.* (citing *Nat'l Union,* 907 S.W.2d at 520). "Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered." *Id.* (citing *Nat'l Union,* 907 S.W.2d at 520).

■■■ An ambiguity can either be "patent" or "latent." *Nat'l Union,* 907 S.W.2d at 520. A patent ambiguity exists on the fact of the contract. *Id.* (citing *Universal Home Builders, Inc. v. Farmer,* 375 S.W.2d 737, 742 (Tex.Civ.App.-Tyler 1964, no writ)). "A latent ambiguity arises when a contract which is unambiguous on its face is applied to the subject matter with which it deals and an ambiguity appears

by reason of some collateral matter." *Id.* (citing *Murphy v. Dilworth,* 137 Tex. 32, 151 S.W.2d 1004 (.1941)). If an ambiguity exists, it must be evident when the contract is read in the context of the surrounding circumstances. *Id.* at 521. In other words, parol evidence cannot be admitted to create an ambiguity. *Id.* Therefore, to determine a latent ambiguity the court applies the facts alleged in the complaint to the insurance policy. *See id.*

## A. Pollution Exclusion

■■■ On its face, the language of the policy is clear and is, therefore, not patently ambiguous. The pollution exclusion provision states:

*Exclusion f. under Paragraph 2., Exclusions of Section I—Coverage A—Bodily Injury and Property Damage Liability is replaced by the following. This insurance does not apply to:*

*f. Pollution*

*(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time.*

*(2) Any loss, or expense arising out of any:*

*(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or*

*(b) Claim or suit by or behalf of a governmental authority for damages because of testing for, monitoring, clean up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."*

(Pl.'s Br. In Support Mot. Summ. J. at App. 59, 100.) The initial 2004–2005 policy defines "pollutants" as:

> Any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(*Id.* at App. 52.) The 2005–2006 renewal policy defines "pollutants" as:

> "Pollutants" means solid, liquid, gaseous, or thermal irritant or contaminant or all material for which a Material Safety Data Sheet is required pursuant to federal, state or local laws, where ever discharged, dispersed, seeping, migrating or released, including onto or into the air or any air supply, water or any water supply or land, including but not limited to petroleum, oil, heating oil, gasoline, fuel oil, carbon monoxide, industrial waste, acid, alkalis, chemicals, waste, sewage; and associated smoke, vapor, soot, fumes from said substance. Waste includes materials to be recycled, reconditioned, or reclaimed.

(*Id.* at App. 100.)

When construing insurance policy provisions that are identical across jurisdictions, courts usually strive for uniformity. *Nat'l Union*, 907 S.W.2d at 522. The language of the absolute pollution exclusion at issue has been examined by numerous courts. *See e.g., Noble Energy*, 529 F.3d at 646. Of these courts, including those in Texas and the Fifth Circuit, the majority have concluded that such language is clear and unambiguous on its face. *Id.* at 522. *See also, Noble Energy*, 529 F.3d at 646 ("Texas courts have consistently held similar pollution exclusions to be unambiguous. Like those courts, we hold the pollution exclusion here at issue to be unambiguous."); *Hydro Tank*, 497 F.3d at 448. The Court finds that this pollution exclusion is not patently ambiguous. The pollutant exclusion precludes all coverage of any liability caused by pollutants. *See Constitution State Insurance Co. v. Iso–Tex, Inc.*, 61 F.3d 405, 409 (5th Cir.1995).

Because this provision is not patently ambiguous, the Court considers whether a latent ambiguity exists. The Clem Defendants make two arguments as to why latent ambiguities exist in the pollution exclusion. First, they claim that the materials do not qualify as pollutants. They next argue that the direct deposit of these materials is not included in the pollution exclusion because it prohibits coverage only for damages "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" (Clem Def.'s Amend. Resp. at App. 27.)

### 1. Materials as Pollutants

Neither Texas nor Fifth Circuit courts have specifically determined whether the solid waste and other substances at issue are pollutants, but these courts have analyzed other materials under similar pollutant exclusions. For example, the Fifth Circuit recently found that Basic Sediment and Water, which was characterized as unwanted waste material in the underlying complaint, to indisputably meet a similar policy definition of pollutant. *Noble Energy*, 529 F.3d at 647. The Fifth Circuit held that "[i]n the policy's pollution exclusion, 'waste' is plainly identified as constituting a pollutant." *Id.* at 649.

Under this reasoning, the materials in the Underlying Lawsuit would also constitute pollution. The Clem Defendants classified the materials at issue as "solid waste (as defined under federal law and Texas law ...), including without limitation foundry sand and other foundry refuse ... as well as brush, trees, wood grindings

(sometimes referred to as mulch or compost), other woody materials, and construction and demolition debris." (Clem Def.'s Fourth Amend. Compl. at 1.)[2] The Clem Defendants allege that this material presences an imminent and substantial endangerment to individuals and the environment. (*Id.* at 9.) Because of this, the Clem Defendants brought this Underlying Lawsuit to clean up the property. (*Id.* at 1.)

The Court cannot question the validity of these claims. The Clem Defendants admit that these materials qualify as waste, but argue that not all waste is a pollutant. They instead claim that waste must also be an irritant or contaminant in order to qualify as a pollutant under the policy.[3] Even if the courts accepts the Clem Defendants' argument that the term waste is somehow limited to only include waste that is also an irritant or contaminant, the solid waste and other substances are contaminants under the plain meaning of the word. A contaminant is defined as something that contaminates. AMERICAN HERITAGE COLLEGE DICTIONARY 309 (Benjamin W. Fortson, et al. eds., Houghton–Mifflin Co. 4th ed. 2002). To contaminate is to make impure or unclean by contact or mixture. *Id.* The Clem Defendants allege that the solid waste and other materials made their land unclean. The purpose of the Underlying Lawsuit is to "clean up the homestead farm of the Clem family." (Clem Def.'s Fourth Amend. Compl. at 1.) Therefore, under the plain definition, the allegations made by the Clem Defendants

fall squarely into the pollution exclusion. Not only are the materials at issue waste, they are also contaminants. Therefore, reading the policy in light of the facts surrounding the Fourth Amended Complaint in the Underlying Lawsuit, the Court finds that the materials at issue are properly classified as pollutants under the policy. The Clem Defendants describe these materials as waste that has made the land unclean by placing individuals in imminent and substantial dangers. Accordingly, no ambiguity exits when applying this pollution exclusion to the facts alleged in the Underlying Lawsuit Complaint.

 Moreover, any evidence submitted to show that the waste material was not an irritant or contaminant is not admissible. While the Clem Defendants did not offer any reasoning as to why these materials are not contaminants in spite of their allegations that they made the land unsuitable, the LBJ Defendants did. The LBJ Defendants, in their response, submitted evidence challenging whether the materials classify as a contaminant. Extrinsic evidence is only admissible when "it is initially impossible to discern whether coverage is potentially implicated," and "when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case." *Northfield Ins. Co.,* 363 F.3d at 528. Not only is there no ambiguity that would make it impossible to deter-

---

2. The Clem Defendants have amended their complaint in the Underlying Lawsuit several times. The Fourth Amended Complaint is currently the live pleading; therefore, the Court uses the allegations alleged in that complaint.

3. The court has considered the cases cited to by the Clem Defendants in their brief. In support of their argument, the Clem Defendants point the court to cases from various jurisdictions arguing that the Court should

find this policy latently ambiguous. The court recognizes that a split has developed among courts as to when an ambiguity exists in the policy as related to specific facts. Because these cases are not binding on this court, the court finds that they are not persuasive. Instead, the court follows the Texas and Fifth Circuit cases, which hold that similar pollution exclusions do not have patent or latent ambiguities when the complaint alleges facts that are included in the policy.

mine if coverage is implicated, but allowing evidence to determine if the waste is also an irritant or contaminant would call into question the Clem Defendants' allegations that the materials made the land unsuitable. Accordingly, this evidence is not admissible and must be stricken.

### 2. The Materials Did Discharge, Disperse, Seep, Migrate, Release, or Escape

The Clem Defendants also argue that the pollution exclusions is not applicable because the damages occurred by the direct deposit of the waste and other materials on the property. (Clem Def.'s Amend. Resp. at App. 27.) According to the Clem Defendants, the direct deposit of materials is not included in the pollution exclusion, which prohibits coverage for damages "which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'" (*Id.*) In support of this argument, the Clem Defendants rely on *Clarendon America Insurance Company v. Bay,* 10 F.Supp.2d 736 (S.D.Tex.1998). In *Clarendon,* the plaintiffs in the underlying lawsuit alleged in their complaint that they were injured through prolonged exposure of their skin to cement, by breathing the fumes, and through substances entering their bodies through their skin, eyes, and lungs. *Clarendon,* 10 F.Supp.2d at 738. The pollution exclusion in *Clarendon* was nearly identical to the present case. The underlying lawsuit plaintiffs in *Clarendon* also argued that the damages did not occurred from the "discharge, dispersal, ... migration, release or escape of pollutants...." *Id.* at 744. The court found this exclusion unambiguous as applied to the majority of the underlying plaintiffs' claims. *Id.* For example, the *Clarendon* court found that injuries suffered "as a result of contacting and inhaling the toxic ingredients, dust, and particulate" were included in the terms of the pollution exclusion. *Id.* The court, however, found that an ambiguity existed when the exclusion was applied to the underlying plaintiffs' claims that "they often exposed different portions of their bodies to the wet cement," and "contact wet cement." *Id.* The Clem Defendants likewise argue that an ambiguity exists in this case because the LBJ Defendants directly deposited the materials into the land. The Clem Defendants claim that the damages were caused by the mere presence of the materials, which were directly placed in the property. They argue that the court in *Clarendon* held that it is ambiguous as to whether injuries such as these, which result from direct contact with the pollutant are included in the this provision.

This argument, however, is misplaced. The *Clarendon* court did not find that all injuries resulting from direct contact are ambiguous under this provision. Instead, the court found that it was unable to determine from the underlying pleadings whether the "injury caused by such contact or exposure occurred when the plaintiffs' skin touched the wet cement and concrete while the cement and its ingredients were in the cement's intended container or location." *Clarendon,* at 744. The court in *Clarendon* stated that if the injuries occurred while the pollutant was in its intended container or location, the injuries did not stem from the "discharge, dispersal, seepage, migration, release or escape of pollutants." *Id.* As a result, the court found a latent ambiguity. *Id.*

The distinction, therefore, is not whether the injury was caused by direct contact, but rather whether the injury was caused by a pollutant in its intended container or location. *See id.* The *Clarendon* court found no ambiguity when the injury was caused by contact with a pollutant outside its intended container or location. *See id.*

The damages alleged by the Clem Defendants were caused by the LBJ Defendants transporting and dumping the pollutant into the Clem Defendants' property. The pollutant was, therefore, not in a secured container or location when it caused harm to individuals and to the environment. The Court finds that it is unambiguous that the injuries alleged in the Underlying Complaint were, therefore, caused by the "discharge, dispersal, seepage, migration, release or escape of pollutants."

## B. Duty to Defend Counter–Claims

In their response, the LBJ Defendants argue that even if the Court found that the Policies do not cover LBJ Defendants for the Clem Defendants' claims, Atlantic would still have a duty to defend the LBJ Defendants against counterclaims asserted by Hensley Industries ("Hensley"), another defendant in the Underlying Lawsuit. (LBJ Def.'s Resp. at 5.) In Atlantic's complaint, it seeks "a declaration from this Court that it has no duty to defend or indemnify Robert Ramirez or LBJ Trucking or any other insured of Defendant for the claims asserted by the *Underlying Plaintiffs* in the Underlying Lawsuit." (Pl.'s Compl. at 8, 20.) There is nothing in Atlantic's complaint asking for any decision regarding any cross or counterclaims in the Underlying Lawsuit. As a result, Atlantic's duty to defend or to indemnify the LBJ Defendants as to any claims other than those brought by the Clem Defendants are not properly before this Court, and the Court makes no determination on those claims.

## C. Duty To Indemnify

 The duties to defend and to indemnify are separate. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). "Unlike the duty to defend, which is based on the allegations in the petition, the duty to indemnify is triggered by the actual facts

establishing liability in the underlying suit." *Evanston Ins. Co. v. Adkins,* No. 3:05–CV–2068–L, 2006 WL 2848054, at *3 (N.D.Tex.2006) (citing *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 823 (Tex.1997)). There may be an initial duty of the insurer to defend the insured, but it may later be determined that the insurer has no duty to indemnify. *Farmers Tex.,* 955 S.W.2d at 82. However, if there is no duty to defend, there is also no duty to indemnify. *Id.* Thus, because the Court finds that there is no duty to defend, it also finds that there is no duty to indemnify.

## CONCLUSION

The Court finds that the pollution exclusion in the policy is both patently and latently unambiguous. Because the pollution exclusion is unambiguous Atlantic's Objections to and Motion to Strike LBJ's Summary Judgment Evidence (doc. 29) is **GRANTED.** After considering only the Clem Defendants' pleadings and the policy provisions, the Court finds that Atlantic has no duty to defend or to indemnify the LBJ Defendants against the Clem Defendants' claims in the Underlying Lawsuit. In light of this finding, the Court need not consider Atlantic's arguments that it has no duty to defend or indemnify under the claims in process exclusion or under the Texas common law "fortuitous loss" doctrine. Therefore, the Court recommends that the District Court **GRANT** Atlantic's Motion for Summary Judgment (doc. 17).

**SO ORDERED,** August 5, 2008.